**Carlos Antonio ESTRADA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 84–7347.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 13, 1985 *.

Decided Oct. 31, 1985.

App.P. 34(a) and Ninth Circuit Rule 3(f).

Miguel D. Gadda, San Francisco, Cal., for petitioner.

Rose Collantes, Dept. of Justice, Washington, D.C., for respondent.

Before SNEED and BEEZER, Circuit Judges, and RAFEEDIE,** District Judge.

BEEZER, Circuit Judge:

Carlos Antonio Estrada petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his requests for political asylum and withholding of deportation. We find that Estrada has not established either a clear probability of persecution or a well-founded fear of persecution. We therefore hold that the decision of the BIA is supported by substantial evidence, and deny the petition for review.

## I

### Background

Estrada is a native and citizen of Guatemala. His wife and two children reside with him in this country. Estrada entered the United States in September 1975 without inspection. He was charged with deportation in December 1980.

Estrada appeared with counsel before an immigration judge. He conceded deportability but requested either political asylum or withholding of deportation. In support of his request, Estrada submitted an affidavit and oral testimony. A State Department Advisory letter was placed into evidence without objection. It stated that Estrada had failed to demonstrate a "well-founded fear of persecution" in Guatemala.

Estrada testified that he was a member of "Vimento de Liberacion," a "right-wing" political party in Guatemala. He was not an official within the party, although he did help distribute leaflets. Estrada also worked part-time for the leader of the par-

** The Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

nia, sitting by designation.

ty, Jorge Torres Ocampo. Ocampo was the cousin of Estrada's wife. Estrada's duties for Ocampo were limited to farm labor and delivering messages.

Estrada testified that he played with a police soccer team, where he learned of various illegal police activities. When he informed Ocampo of these activities, Estrada stated that Ocampo publicly protested them. As a result, threats were allegedly made against Estrada. Estrada then left Guatemala after first obtaining an exit permit. Estrada never testified that he had maintained contact with Ocampo after he left Guatemala. When asked if he had ever openly expressed any political opinion against the Guatemalan government, Estrada replied that he could not because the government might kill him.

Estrada further testified that Ocampo and two of his aides were murdered in June 1981, more than five years after Estrada left Guatemala. After Ocampo's death, government officials allegedly went to Estrada's mother's house looking for him. Estrada maintains that he faces persecution from the government and private groups because they know of his connection to Ocampo. He admitted that he had never been arrested, detained, or interrogated by any government officials in Guatemala.

The immigration judge denied Estrada's application for asylum and withholding of deportation, finding that Estrada was an insignificant political figure and that his testimony concerning the threats was not credible. On January 16, 1984, the BIA issued a final order, finding Estrada deportable. The BIA adopted the immigration judge's reasoning, holding that Estrada had failed to show a well-founded fear that he would be singled out for persecution because of his political opinions. The BIA relied heavily on the immigration judge's determination that Estrada's representations were not credible. Estrada timely seeks review of the BIA's final order.

We must determine whether substantial evidence supports the BIA's decision. We find that it does.

II

*Statutory Framework*

■ Congress has enacted a statutory framework under which asylum and withholding of deportation cases must be considered. The government has the initial burden of establishing the alien's deportability by clear and convincing evidence. *Woodby v. INS*, 385 U.S. 276, 277, 87 S.Ct. 483, 484, 17 L.Ed.2d 362 (1966); *Espinoza-Martinez v. INS*, 754 F.2d 1536, 1539 (9th Cir.1985). Where, as here, the alien admits deportability, the government's burden in this regard is satisfied. However, an alien can still obtain relief from deportation if certain conditions are established.

An alien may apply for asylum in the United States under 8 U.S.C. § 1158(a). The alien may also apply for withholding of deportation under 8 U.S.C. § 1253(h). When an application for asylum is made after deportation proceedings have begun, that application is automatically considered as a request for withholding of deportation under 8 U.S.C. § 1253(h) as well. 8 C.F.R. § 208.3(b) (1983).

■ 8 U.S.C. § 1253(h)(1) provides:

The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

To prevail under section 1253(h)(1), the alien must show a "clear probability of persecution," which means that it is "more likely than not" that the alien will suffer persecution. *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984). The alien bears the burden of proof. *McMullen v. INS*, 658 F.2d 1312, 1317 (9th Cir.1981). We review withholding of deportation decisions under the substantial evidence standard. *Espinoza-Martinez v. INS*, 754 F.2d at 1539.

The Attorney General may also grant asylum in his discretion if he determines

that an alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). The section defines a "refugee" as a person:

who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

■ We review asylum decisions under a two-tier approach. The initial decision of whether the alien has met the refugee definition under 8 U.S.C. § 1101(a)(42)(A) is reviewed under the substantial evidence test. The ultimate discretionary grant or denial of asylum, however, is reviewed for abuse of discretion. *Cardoza-Fonseca v. INS,* 767 F.2d 1448 (9th Cir.1985); *Espinoza-Martinez v. INS,* 754 F.2d at 1539.

■ We have recently stated that the "well-founded fear" standard is "more generous" than the "clear probability of persecution" requirement. *Argueta v. INS,* 759 F.2d 1395, 1396–97 (9th Cir.1985); *Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1282 (9th Cir.1984). Under either standard, however, the alien must introduce some specific evidence to show that such persecution, if carried out, would be directed toward the alien as an individual. *Espinoza-Martinez v. INS,* 754 F.2d at 1540; *see Zepeda-Melendez v. INS,* 741 F.2d 285, 290 (9th Cir. 1984); *Chavez v. INS,* 723 F.2d 1431, 1434 (9th Cir.1984); *Shoaee v. INS,* 704 F.2d 1079, 1084 (9th Cir.1983). Exactly what amount of specific evidence is required is dependent upon the facts and circumstances of each case. *Espinoza-Martinez v. INS,* 754 F.2d at 1540. It is clear, however, that the alien's evidence must be credible. *Espinoza-Martinez v. INS,* 754 F.2d at 1539; *Saballo-Cortez v. INS,* 749 F.2d 1354, 1356 (9th Cir.1984).

## III

### *Discussion*

■ Examining the record in this case, we hold that Estrada has not established either a clear probability of persecution or a well-founded fear of persecution. Estra-

da testified that he began receiving threats against his life after informing Ocampo of various illegal police activities. Estrada also testified that government officials continued to look for him after he left Guatemala. However, on the critical issue of the receipt of threats, the immigration judge stated that he did not believe Estrada was testifying truthfully. Because the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given "much weight." *Phinpathya v. INS,* 673 F.2d 1013, 1019 (9th Cir.1981), *rev'd on other grounds,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984); *see also Espinoza Ojeda v. INS,* 419 F.2d 183, 186 (9th Cir. 1969) (hearing officer is best judge of credibility).

■ Substantial evidence supports the immigration judge's finding that Estrada's testimony lacked credibility. His allegations regarding the threats were vague. Estrada did not say how many threats were made, nor did he explain their substance. Although he stated he was afraid of the government as well as "private groups," he could not identify any of the groups he purportedly feared. Estrada was not an important political figure. He worked as a farm laborer and ran errands for Ocampo. In response to an inquiry concerning his activities with the political party, he replied, "The only thing I was trying to do was make a living." Estrada stated that he never had expressed his political opinions openly, allegedly out of fear.

The record contains further support for the denial of asylum relief. Although he was supposedly in danger, Estrada was granted an exit permit. *See Espinoza-Martinez v. INS,* 754 F.2d at 1540 (ability to obtain a passport cuts against alien's argument that persecution is likely). Estrada points to the murder of Ocampo and his aides as evidence of the danger against him. However, these killings occurred more than five years after Estrada left Guatemala. Estrada stated that he did not know whether his former political party was ever declared illegal or whether it even still existed. Finally, the evidence indicates that Estrada's family has remained in Gua-

temala and has not been harmed. The absence of harassment of an alien's family tends to reduce the probability of persecution. *Chavez v. INS,* 723 F.2d 1431, 1434 (9th Cir.1984).

Accordingly, we cannot agree with Estrada that he has established even a well-founded fear of persecution. We find that the BIA's decision is supported by substantial evidence. Therefore, the petition for review is

DENIED.