**Maria Marta FLOREZ–DE SOLIS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 85–7480.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1986.

Decided Aug. 8, 1986.

---

4. We also deny Dezell's request for attorney's fees on appeal.

Sylvia E. Bonnell, Bonnell & Davis, San Francisco, Cal., for petitioner.

Michael C. Johnson and Joseph F. Ciolino, Dept. of Justice, Washington, D.C., for respondent.

Before WALLACE, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Maria Marta Florez-de Solis (Solis) seeks review of a Board of Immigration Appeals (BIA) order dismissing her appeal from an immigration judge's denial of her request for political asylum under section 208(a) of the Refugee Act, 8 U.S.C. § 1158(a) (1982), and for withholding of deportation under section 243(h) of the Immigration and Na-

tionality Act, 8 U.S.C. § 1253(h) (1982). We conclude that the BIA applied the correct legal standards to Solis' requests and that its decision is supported by substantial evidence. We therfore deny the petition for review.

## I. BACKGROUND

Solis, a native and citizen of El Salvador, entered the United States without inspection on May 24, 1981. On June 22, 1983, she filed an application with the Immigration and Naturalization Service (INS) for political asylum in the United States. The INS forwarded her application to the State Department, and on July 25, 1983, the State Department informed the INS that in its opinion Solis had not established a well-founded fear of persecution in El Salvador. The INS informed Solis of the State Department's adverse opinion and afforded her an opportunity to submit additional evidence. In response, Solis submitted several newspaper articles. The INS determined that the articles simply indicated the general state of unrest in El Salvador and did not support Solis' assertion that she personally had reason to fear persecution in El Salvador. The INS therefore denied Solis' request for asylum.

On January 9, 1984, the INS informed Solis that she was subject to deportation and gave her notice of a hearing to be held before an immigration judge (IJ). Solis appeared at the hearing with counsel, conceded deportability, and requested asylum and withholding of deportation.

In support of her requests for relief from deportation, Solis testified that she worked as a secretary for a well-known attorney in El Salvador for six months until he was assassinated in December 1980. Her co-workers told her guerrillas assassinated the attorney. Solis also testified that the attorney may have been assassinated by disgruntled clients or by jealous lawyers. She stated that her former employer was well known in El Salvador but that to the best of her knowledge he was not involved in politics.

Shortly after Solis' employer was assassinated, his former clients threatened Solis in an attempt to collect money they thought her former employer owed them. At about this same time guerrillas came to Solis' home. The guerrillas came to the door of a bedroom in which Solis and others had locked themselves, mentioned Solis' name, and said "let's go girls." The guerrillas then passed on to the next bedroom. Solis testified that she took the guerrillas' statement to mean that they would kill her. At another place in her testimony, Solis stated that she believed the guerrillas came to her house because she had worked for the assassinated attorney. She also testified that the disgruntled clients were associated with the guerrillas. She testified that she was not confronted by guerillas either before or after this incident.

After the guerrillas left, Solis left the house and did not return. Solis first went to San Miguel where she was robbed by masked men she did not know. She testified that the men were robbing everyone in the area. She also testified that the robbery was not random but did not elaborate on what she meant. After San Miguel, Solis went to Sociedad where she worked for two months as an extern in a school until she earned enough money to leave El Salvador.

Solis also testified that two of her uncles had been killed in El Salvador. She did not say why they were killed.[1]

At the conclusion of Solis' testimony, the IJ issued an oral opinion in which he found that Solis was credible but that she had not met her burden of proof under either section 208(a) or 243(h). He therefore denied her request for asylum and withholding of deportation. The IJ found that Solis did

---

1. In her brief in this court, Solis gave more details on the deaths of her uncles and indicated that at least three other relatives have been killed in El Salvador. This evidence was not presented below. It therefore is not a part of the administrative record, and we may not consider it on this petition. *See* 8 U.S.C. § 1105a(a)(4) (1982) (petition shall be determined solely on administrative record on which deportation order based).

not have any political affiliations and that, although her former employer was famous, it was not clear that he had any political affiliations. The IJ also found that Solis' confrontation with the guerrillas was an indication of the general hostilities in El Salvador but did not indicate that persecution was directed at her personally.

Solis appealed the IJ's decision to the BIA. In her notice of appeal to the BIA she stated the following as the reason for her appeal:

The respondent proved that were she forced to return to El Salvador, there would be a clear probability that she would suffer persecution. Therefore, the Judge abused his discretion in denying Political Asylum under Section 243(h).

She also stated that she would file a brief with the BIA. No brief was ever filed. On April 25, 1985, the BIA dismissed Solis' appeal. It stated that from its review of the record it found "the immigration judge's decision thorough and conclude[d] that his disposition of this case was correct." The BIA went on to state that "nothing presented on appeal reflects that the denial of the requested relief was inappropriate."

Solis contends that (1) the IJ and the BIA did not apply the more lenient "well-founded fear of persecution" standard to her request for political asylum, (2) the decision to deny her request for asylum and withholding of deportation is not supported by substantial evidence, (3) the administrative record before the BIA was deficient, and (4) she was prejudiced by the INS's failure to follow its own regulations.

## II. LEGAL STANDARDS

■ The government has the burden of proving that an alien is deportable. However, if the alien concedes deportability as Solis did in this case, the government's burden on this issue is satisfied. *Estrada v. INS*, 775 F.2d 1018, 1020 (9th Cir.1985). A deportable alien may obtain relief from deportation if he or she meets the requirements for political asylum under section

208(a) or for withholding of deportation under section 243(h).

Section 243(h)(1) provides in pertinent part:

The Attorney General shall not deport any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

Under section 243(h)(1), an alien may not be deported to a country if the alien shows a "clear probability of persecution" in that country based on one of the reasons listed in the section.

Unlike section 243(h)(1), relief from deportation under section 208(a) is discretionary. If the alien demonstrates that he or she is a refugee for purposes of section 208(a), the Attorney General may grant the alien asylum. A person is a refugee if he or she is unwilling or unable to return to the country of his or her nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A) (1982). In several recent cases, we have stated that the "well-founded fear" standard and the "clear probability of persecution" standard are not identical and that the "well-founded fear" standard is the "more generous" of the two. *See, e.g., Estrada*, 775 F.2d at 1021; *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1282 (9th Cir.1984).

■ We review the BIA's decision on a request for withholding of deportation under the substantial evidence standard. *Estrada*, 775 F.2d at 1020. The BIA's asylum decisions are reviewed under a two-tiered approach. The decision whether the alien has a well-founded fear of persecution is reviewed for substantial evidence. The grant or denial of asylum, however, is reviewed for abuse of discretion. *Estrada*, 775 F.2d at 1021. Solis' contention that the BIA applied an incorrect standard is a question of law reviewed *de novo*. *See*

*United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III. DISCUSSION

A. *The Section 208(a) "Well-Founded Fear of Persecution" Standard*

Solis' first contention is that the IJ and the BIA did not apply the "well-founded fear" standard to her request for asylum. The IJ stated the standards he applied to Solis' requests for relief from deportation as follows:

> There remains, of course, a determination as to whether or not, under the circumstances, her testimony established a fear of persecution which extends beyond mere conjecture to the level of clear probability in the case of 243(h), or a well founded fear that she *would be* persecuted within the meaning of 208(a). (emphasis added).

Solis contends that by using the term "would be" in his statement of the "well-founded fear" test, the IJ essentially applied the "clear probability" standard to her request for asylum under section 208(a). Solis rests her argument on our decision in *Cardoza-Fonseca v. INS,* 767 F.2d 1448 (9th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).

In the two cases we considered in *Cardoza-Fonseca,* the BIA indicated that it thought the "clear probability" and "well-founded fear" standards were identical. It then denied the request for asylum in each case because the petitioner had not shown that she *would* be persecuted if returned to her country. *Cardoza-Fonseca,* 767 F.2d at 1450. In its briefs in this court, the BIA

continued to assert that there was no substantive difference between a "well-founded fear of persecution" and a "clear probability of persecution." *Id.* at 1454. We reasserted that the two standards are different and that the "well-founded fear" standard is more generous than the "clear probability" standard. *Id.* at 1453. We took the BIA to task for not following "the voluminous guidelines available to assist in construction of the 'more generous' 'well-founded fear' standard." *Id.* Although we emphasized the Board's use of "would," we did not rest our decision on that ground. Rather, we rested it on the Board's continued assertion that the two standards are identical.

 In this case, neither the BIA nor the IJ asserted that the two standards are identical. The IJ clearly stated that he applied the "well-founded fear" standard to Solis' request for asylum and the "clear probability" standard to her request for withholding of deportation. It is perhaps unfortunate that the IJ used "would" in his statement of the "well-founded fear" standard. However, use of that word is not by itself dispositive.[2] We must look at the entire opinion to determine whether the IJ and the BIA applied the correct standard to Solis' request for asylum.

In this case, our examination of the IJ's opinion indicates that the IJ and the BIA applied the correct standard to Solis' request for asylum. At the conclusion of his opinion, the IJ stated:

> "I do not find, under the circumstances in the case of the Respondent, that she has a well founded fear of persecution....
>
> The respondent has not satisfied her burden of proof that she is a 'refugee,'

---

**2.** At times this court has used "would" when discussing the "well-founded fear" standard. *See, e.g., Larimi v. INS,* 782 F.2d 1494, 1497 (9th Cir.1986) ("Larimi's supporting evidentiary materials do not satisfy the objective component of a well-founded fear.... That such activity *would* result in persecution if he returned to Iran is only speculative." (emphasis added)); *Garcia-Ramos v. INS,* 775 F.2d 1370, 1374 (9th Cir.1985) ("That the fear must be 'well-founded' implicates a requirement of objective reason-

ableness. In other words, there must be some basis in reality or reasonable possibility that a petitioner *would* be persecuted." (emphasis added)). Although we do not condone replacing "of persecution" with "would be persecuted" in stating the "well-founded fear" standard, we note that it is an easy mistake to make and emphasize that by itself use of the word "would" is not dispositive of whether the proper standard was applied.

pursuant to Section 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A) ]; therefore, her application for political asylum, pursuant to section 208(a) must be denied."

Neither can I find that there is a clear probability that her life or freedom would be in danger, based on any one or more of the five factors for consideration under section 243(h).

This statement, along with the IJ's initial clear separation of the two standards, demonstrates that the IJ and the BIA. applied the "well-founded fear" standard to Solis' request for asylum and the "clear probability" standard to her request for withholding of deportation.

### B. *Substantial Evidence*

Solis next argues that the IJ's finding that she has established neither a well-founded fear nor a clear probability of persecution is not supported by substantial evidence.

In order to establish a claim for either asylum or withholding of deportation, Solis must show that the persecution she fears or of which there is a clear probability is "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1253(h)(1); *see Hernandez-Ortiz v. INS*, 777 F.2d 509, 519 (9th Cir.1985). Solis asserts that she fears persecution in El Salvador based on political opinion imputed to her because of her association with her former employer. *See id.* at 517 (irrelevant whether a person actually possesses the views for which she is persecuted as long as the persecutor believes she does).

■ The record in this case indicates that the persecution Solis fears or that she may suffer if she returns to El Salvador is not on account of her political opinion or that of her employer. Rather, the incidents Solis described appear to be either random occurrences indicative of the general upheaval in El Salvador or attempts to collect a debt owed by her former employ-

er. Solis' former employer was apparently killed by disgruntled clients or by jealous collegues and not for political reasons. Solis testified that shortly after her employer's death his clients came to her to collect a debt owed them by the employer and that some of these clients were associated with the guerrillas. She then testified that guerrillas came to her home because she worked for the assassinated attorney. This testimony indicates that the guerrillas came to her home not for political reasons but to collect a debt.

Substantial evidence supports the IJ's and the BIA's conclusion that Solis has not established a well-founded fear or a clear probability of persecution on account of political opinion. She therefore is not entitled to withholding of deportation, and we need not decide whether the Attorney General could have denied her request for asylum as a matter of discretion. *See Vides-Vides v. INS*, 783 F.2d 1463, 1469 (9th Cir.1986).

### C. *Inadequate Record*

■ The transcript of Solis' hearing before the IJ contains many instances in which "(inaudible)" replaces parts of questions and Solis' answers to those questions. In some cases the entire question and answer are missing. Solis argues in this court that the BIA erred in relying on this inadequate transcript to affirm the IJ's decision. She argues that the Board's precedents require it to remand this case to the IJ for further proceedings. *See Matter of Charles*, 16 I. & N. Dec. 241, 241–42 (BIA 1977) (record containing various deficiencies remanded to the IJ for further proceedings).

Solis did not raise this argument before the BIA. She has therefore failed to exhaust her administrative remedies on this issue, and we are precluded from considering it at this stage of the proceedings. *Tejeda-Mata v. INS*, 626 F.2d 721, 726 (9th Cir.1980), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982).[3]

---

**3.** A copy of the transcript was forwarded to Solis' attorney on November 13, 1984. Solis'

### D. *Inadequate Notice*

Finally, Solis asserts that the INS failed to follow its own regulations and in so doing prejudiced her rights to major administrative remedies. Solis asserts that her former counsel did not receive a copy of the BIA's decision and that notice of her deportation was sent to her old address.

We have held that "[v]iolation of a regulation renders the deportation unlawful only if the violation prejudiced the interests of the alien which are protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir.1979). The regulations implicated by the INS's actions in this case require service of BIA decisions on the alien's representative, (8 C.F.R. §§ 3.1(f) and 292.5(a) (1986)) and notice to the alien of the time and place of her deportation (8 C.F.R. § 243.3 (1986)). These regulations protect Solis' right to petition this court for review and her right to appear for deportation at the proper time to avoid deportation without notice. Solis was not deprived of these rights. Her petition to this court for review was timely and she has obtained that review. Further, the filing of her petition for review in this court stayed her deportation. *See* 8 U.S.C. § 1105a(a)(3) (1982). Therefore, lack of notice of her deportation did not prejudice her.

Solis asserts that her right to apply to the BIA for reopening of its decision was prejudiced. That is not the case. There is no time limit within which a motion to reopen must be filed. *See* 8 C.F.R. § 3.8 (1986). Further, Solis indicates in her brief that she is currently preparing a motion to reopen.

The INS's violation of its regulations in this case did not prejudice any of Solis' interests protected by the violated regulations. Her deportation was therefore not rendered unlawful by these violations.

## IV. CONCLUSION

The BIA's decision that Solis does not qualify for asylum or withholding of depor-

---

brief to the BIA, which Solis never filed, was due on November 26, 1984. She was thus given

---

tation is affirmed. The petition for review is DENIED.

WALLACE, Circuit Judge, concurring:

I concur fully in the majority's opinion for this case. I write separately only to point out that Solis's reliance on the BIA's use of the word "would" asks us to ignore completely the context of that word as used in her case, as compared to the context of its usage in *Cardoza-Fonseca v. INS*, 767 F.2d 1448 (9th Cir.1985) (*Cardoza-Fonseca*), *cert. granted,* —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).

In *Cardoza-Fonseca,* we stated:

The BIA affirmed, stating that no matter what burden of proof Cardoza-Fonseca faced, whether " 'clear probability,' 'good reason' or 'realistic likelihood,' " all of which the Board thought to be identical, she failed to show that she *"would* suffer persecution." The Board also reasoned that her claim failed because she had not introduced any objective evidence to demonstrate that she *"will* be subject to persecution."

767 F.2d at 1450 (emphasis supplied by court). We thus emphasized that the BIA denied asylum eligibility because the alien "failed to show that she *'would* suffer persecution.' " *Id.; see Rebollo-Jovel v. INS,* 794 F.2d 441, 445 (9th Cir.1986). In this case, by contrast, the IJ found that Solis had failed to demonstrate "a well-founded fear that she would be persecuted." There is clearly a substantial difference between a demand that the alien demonstrate that she *would be* persecuted if deported, and a demand that the alien demonstrate that she has a *well-founded fear that she would be persecuted.* The IJ's formula is indistinguishable from a requirement that the alien demonstrate a well-founded fear of persecution.

---

adequate opportunity to raise this argument before the BIA.