21 F.3d 1112
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jacqueline Alovera DELACENA, aka Jacqueline Delacena Baello,
Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70455.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1994.
Decided April 8, 1994.
 
 1
 Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Jacqueline Alovera Delacena[1] seeks reversal of the denial by the Board of Immigration Appeals' (BIA) of her request for asylum, withholding of deportation and voluntary departure. She argues that the BIA erred in concluding that she failed to demonstrate that she had a well-founded fear of persecution, or that a clear probability exists that she will be persecuted, for her political opinion, if she is deported to the Philippine Islands. She also contends that the BIA abused its discretion in denying her request for voluntary departure. We affirm because we conclude that the record does not show that she had a well-founded fear of persecution, or that there is a clear probability that she will be persecuted, for her political opinion. We also hold that the BIA's exercise of discretion in denying Delacena's request for voluntary departure was not arbitrary or capricious.
 
 I.
 
 4
 Delacena argues the following evidence is sufficient to demonstrate that she is entitled to asylum and withholding of deportation.
 
 
 5
 One. Her father owns farm land in Iloilo City, located on an island several hundred miles from Manila, where the National Peoples Army (NPA), a communist group, has been imposing forced taxation and engaging in violent attacks upon peasants, tenant farmers, landowners, members of the military, and other citizens.
 
 
 6
 Two. The NPA demanded that her father pay money or provide a portion of his crops to the NPA.
 
 
 7
 Three. In 1982, she overheard her father tell her brother-in-law that he would have his foreman, Ramon Alovera, a first cousin of Ms. Delacena's mother, make payments to an anonymous caller. She was told by her father that she should stay in the family compound and travel only with security guards.
 
 
 8
 Four. In 1987, Alovera was murdered. Delacena attributed the murder to the NPA as retaliation against her father for refusing to make payments to the NPA. A police report of the killing described the eye witness attack as a shooting by three unidentified, armed male assailants.
 
 
 9
 Five. Three "threat" letters signed by "Ka Bernie" were sent to Delacena's father in Iloilo City after Ms. Delacena entered the United States. Delacena acknowledged that she did not know who Ka Bernie is, but she believed that it was someone in the NPA. Delacena testified that "Ka" refers to an old or a respected person and that the NPA has adopted that terminology for reference to its leaders. Each letter also contains the hammer and sickle sign. The August 18, 1983 letter is addressed to "my friend" and asks for help for "our needs." The letter instructs the reader to "[p]ut it outside your door at around 1 o'clock in the morning and be quiet." The February 3, 1986 letter states: "[A]s if you are forgetting what we talked about. It is not enough what we are receiving. We need a lot especially our brothers in the mountains. Thank you." The December 23, 1987, addressed to "dear friend" reads: "As if you did not hear the appeal of your brothers. This is important especially for what we are fighting for. We hope it will not happen to you what happened to Ramon Alovera. Take care of your loved ones, especially your family...."
 
 II.
 
 10
 We review the denial of a request for withholding of deportation and asylum[2] under the substantial evidence standard. Sanchez-Trujillo v. INS, 801 F.2d 1571, 1578 (9th Cir.1986); Florez-DeSolis v. INS, 796 F.2d 330, 333 (9th Cir.1986). The Attorney General must grant a request for withholding of deportation pursuant to section 243(h), 8 U.S.C. 1253(h) (1988), amended by, 8 U.S.C. Sec. 1253(h) (Supp. IV 1992) if the alien demonstrates, by objective evidence, a " 'clear probability' that his life or freedom will be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion" if forced to return to his or her country of origin. Sanchez-Trujillo v. INS, 801 F.2d at 1578.
 
 
 11
 A person who is otherwise deportable may be granted asylum at the discretion of the Attorney General if he or she demonstrates a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. 1101(a)(42)(A) (1988). The BIA found that Delacena failed to meet her burden of proof under either the clear probability or well-founded fear standard. We first review this finding under "the more generous well-founded fear standard." Arriaga-Barrientos v. INS, 937 F.2d 411, 413 (9th Cir.1991). If "substantial evidence supports the [BIA's] finding as it relates to well-founded fear, we will not need to review separately in light of the more stringent clear probability standard; [the alien's] failure as to the former necessarily demonstrates his failure as to the latter." Id. (citation omitted).
 
 
 12
 The evidence presented by Delacena does not demonstrate that the NPA is demanding money from persons who own farms in Iloilo City because of their political views. The record shows that the extortionist demands of the NPA emanate from its desire for survival and promotion of its communist ideals. The "mere existence of a generalized 'political' motive" underlying the NPA's extortion of money and goods from Delacena's family, however, is inadequate to establish the proposition that Delacena "fears persecution on account of political opinion...." Elias-Zacarias v. INS, 112 S.Ct. 812, 816 (1992) (emphasis in original). Where a persecuted activity could be the result of many causes, "some protected by the statute and others unprotected, the victim must tie the persecution to a protected cause. To do this, the victim needs to show the persecutor had a protected basis (such as the victim's political opinion) in mind in undertaking the persecution." Canas-Segovia v. INS, 970 F.2d 599, 601 (1992).
 
 
 13
 In this matter, the record demonstrates that the NPA's extortionist threats and attacks are directed against the population in general, from peasants and tenant farmers to military officials and landowners. This conduct is undoubtedly violative of the penal laws of the Philippine Islands. Nevertheless, Delacena has failed to demonstrate that the threats against her family are motivated by her political views. The Supreme Court has instructed that "[t]he ordinary meaning of the phrase 'persecution on account of ... political opinion' ... is persecution on account of the victim's political opinion, not the persecutor's." Elias-Zacarias, 112 S.Ct. at 816 (emphasis in original). Moreover, harm arising from a general civil unrest does not qualify an alien for asylum relief. Martinez-Romero v. INS, 692 F.2d 595, 595-96 (9th Cir.1982). The alien must show by specific evidence that the "alien's predicament is appreciably different from the dangers faced by the alien's fellow citizens." Sanchez-Trujillo, 801 F.2d at 1579 (internal quotations and citation omitted). The evidence relied on by Delacena is not specific enough to indicate that her predicament is appreciably different from the dangers facing other Philippine citizens in Iloilo City.
 
 
 14
 Moreover, the evidence in the record demonstrates that extortionist conduct of the NPA was centered in the region of Iloilo City. The record shows that Delacena lived in Manila until 1982. While residing in Manila, Delacena was not subjected to the NPA's demands for money. She has failed to demonstrate a well-founded fear of persecution by the NPA if she returns to Manila. Deportation to the Philippine Islands does not require Delacena to return to her father's home in Iloilo City. She could settle in Manila. See Cuadras v. INS, 910 F.2d 567, 571 n. 2 (1990) (when reviewing the BIA's determination as to well-founded fear of persecution, court may consider evidence that alien "could avoid geographically localized danger by settling in a different part of the country.") (citing Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986)).
 
 
 15
 Relying on additional material submitted with the brief she filed in this court, Delacena asserts that she and her family are large landowners and thus the "class enemy" of the NPA. She contends that the NPA has personally persecuted her because the NPA has imputed a political opinion to her family based on her family's status as a wealthy landowner. We cannot consider this new evidence because our review is limited to the certified administrative record. 8 U.S.C. Sec. 1105(a)(4) (1988). Likewise, we are precluded from reviewing Delacena's claim that she and her family were treated as enemies by the NPA because of a political opinion imputed to them based on a class difference that the NPA would not tolerate. In Flores-DeSolis v. INS, 796 F.2d 330, 335 (9th Cir.1986), we held that an alien who failed to raise an argument before the BIA had failed to exhaust her administrative remedies on the issue which precluded our review. Here, Delacena failed to exhaust her administrative remedies on the issue of her status as a wealthy landowner which precludes our review. Id.
 
 
 16
 We are persuaded that substantial evidence supports the BIA's determination that Delacena failed to sustain her burden of proving a well-founded fear of persecution.
 
 III.
 
 17
 We review the denial of voluntary departure to determine whether the BIA exercised discretion and whether the exercise of such discretion was arbitrary or capricious. Cuevas-Ortega v. INS, 588 F.2d 1274, 1278 (1979). The Attorney General has broad discretionary powers to grant or deny a request for voluntary departure under section 244(e), 8 U.S.C. Sec. 1254(e) (1988), amended by, 8 U.S.C. 1254(e) (Supp.IV 1992). "The BIA properly exercises its discretion if it supports its conclusion with a reasoned explanation based on legitimate concerns." Hernandez-Luis v. INS, 869 F.2d 496, 499 (9th Cir.1989).
 
 
 18
 Here, the BIA performed an independent review of the IJ's decision. The BIA balanced Delacena's length of residence in the United States, her family ties to the United States through her children and her employment work history against the adverse factors of (1) circumvention of orderly immigration procedures in remaining longer in the United States than permitted under her nonimmigrant visa; (2) falsely claiming to be in possession of a green card when questioned by an agent of the INS; and (3) employment upon entry into the United States at a time when her nonimmigrant visa did not authorize employment[3] which indicates she misled INS authorities about her intention to enter solely as a visitor.
 
 
 19
 Delacena's illegal activity is a legitimate concern to the administration of immigration laws. See INS v. Rios-Pineda, 471 U.S. 444, 451-52 (1985) (BIA may deny voluntary departure on discretionary grounds if the "explanation of its decision was grounded in legitimate concerns about the administration of immigration laws and was determined on the basis of the particular conduct of respondents."). The BIA need not reward those who flagrantly disregard our immigration laws in order to jump to the head of the long line of persons trying lawfully to enter this country. The BIA's exercise of discretion in denying Ms. Delacena's request for voluntary departure was not arbitrary or capricious.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The caption of the certified administrative record and the documents therein refer to petitioner as Jacqueline Alovera Delacena. Ms. Delacena testified, however, that her married name is Baello
 
 
 [2]
 Asylum is reviewed under a two-tier standard: first, the record is examined to determine if substantial evidence supports the BIA's determination that the alien either proved or failed to prove statutory eligibility; second, the BIA's subsequent exercise of discretion in granting or denying asylum to a statutorily eligible alien is reviewed for abuse of discretion. Sanchez-Trujillo v. INS, 801 F.2d 1571, 1578 (9th Cir.1986). Because the BIA concluded that Ms. Delacena had failed to establish a well-founded fear of persecution on account of any of the five statutory grounds, our review is for substantial evidence
 
 
 [3]
 The IJ noted that, at the time of the asylum hearing on January 26, 1989, Delacena was employed and had permission to work. At the time Delacena entered the United States in May of 1983, however, she entered as a nonimmigrant visitor and did not have permission to undertake employment. In the Biographic Information section of Delacena's asylum application, she candidly admits that she was first employed in May of 1983