**Eugueni BORTNIKOV, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–70279.**

United States Court of Appeals, Ninth Circuit.

Submitted March 14, 2003.*
Decided April 3, 2003.

Before: RYMER, KLEINFELD, and PAEZ, Circuit Judges.

## MEMORANDUM**

Eugueni Bortnikov (Bortnikov) is a native and citizen of Russia who entered the United States on a student visa in 1994. He petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum and withholding of deportation. Because deportation proceedings were commenced before April 1, 1997, and the final order was issued after October 30, 1996, we have jurisdiction pursuant to former 8 U.S.C. § 1105a(a), as amended by the transitional rules for judicial review in § 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *See Kalaw v. INS,* 133 F.3d 1147, 1149–50 (9th Cir.1997). We deny the petition.

I

■ Substantial evidence supports the BIA's determination that Bortnikov failed to establish past persecution on account of his political opinion, his ethnicity, or his membership in a particular social group. The Pamyat members attacked Bortnikov solely because they believed that he possessed a criminally inculpatory videotape. Regardless of whether Bortnikov may have privately harbored an anti-Pamyat

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

political view, there was no nexus between Bortnikov's views and the Pamyat members' decision to attack him. Likewise, the facts that Bortnikov is Jewish, that Pamyat is an anti-Semitic organization, and that Pamyat members attacked Bortnikov are not enough, by themselves, to establish persecution on account of his being Jewish. There is no evidence that Pamyat was aware that Bortnikov is Jewish when they attacked him. Finally, regardless of whether Russian journalists qualify as a particular social group for asylum purposes, Bortnikov was not targeted by Pamyat *because of* his status as a Russian journalist. *See Florez-de Solis v. INS,* 796 F.2d 330, 335 (9th Cir.1986); *Desir v. Ilchert,* 840 F.2d 723, 727 (9th Cir.1988).

## II

■ Assuming that the argument is not waived, the evidence also does not compel the conclusion that Bortnikov has a well-founded fear of future persecution on account of his political opinion, his ethnicity, or his membership in a particular social group. There is no evidence that Pamyat has imputed a political opinion to Bortnikov since he left Russia. Pamyat members have made threatening phone calls to Bortnikov's family, but these calls have all focused on the videotape, and the one passing reference to Bortnikov's being Jewish was interpreted by Bortnikov's sister to be related to the videotape. Russian journalists are too large and diverse a collection of individuals to qualify as a "particular social group," *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1576–77 (9th Cir. 1986); *De Valle v. INS,* 901 F.2d 787, 792–93 (9th Cir.1990), and in any event there is no indication that Russian journalists as such are targeted by Pamyat, or anyone else.

## III

Having failed to satisfy the lower standard of proof to establish eligibility for asylum, Bortnikov necessarily cannot show eligibility for withholding of deportation. *Kazlauskas v. INS,* 46 F.3d 902, 907 (9th Cir.1995).

PETITION DENIED.

PAEZ, J., dissenting.

Because I do not believe that substantial evidence supports the BIA's finding that "Pamyat members attacked Bortnikov *solely* because they believed that he possessed a criminally inculpatory videotape," I respectfully dissent. Both the record and our precedent compel the conclusion that by presenting credible testimony that his persecution was "on account of" a protected ground, Bortnikov established his eligibility for asylum.

"[I]t is often difficult to determine the exact motive ... for which harm has been inflicted." *In Re S-P-,* 21 I. & N. Dec. 486, 492, 1996 WL 422990 (BIA 1996). In consequence, an asylum applicant need only "provide *some* evidence of [motive], direct or circumstantial." *INS v. Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original). It is well established that an applicant may qualify for asylum where persecution occurred for multiple reasons, as long as "the harm was motivated, at least in part, by an actual or implied protected ground." *Borja v. INS,* 175 F.3d 732, 736 (9th Cir.1999) (en banc); *see also In Re S-P-,* 21 I. & N. Dec. at 494–95. Here, the evidence compels a finding that Bortnikov's political opinion and religion furnished significant motivation for the persecution he suffered.

Before Bortnikov revealed his political opinion, the only consequence of his capture of Pamyat's coup attempt on tape was

his suspension from work. When Pamyat members came to his apartment to demand the tape, Bortnikov accused them of being fascists and killing people. Only then did they physically attack him, beating him with a metal pipe until he was unconscious. This physical attack and the ongoing threats against his life did not occur until Bortnikov revealed his political opinion to the Pamyat members.

Thus, this case is closely analogous to *Borja*, where we held that mixed motives led to the petitioner's persecution. 175 F.3d at 737. Borja had refused to become a member of the New People's Army, telling them that she was opposed to them politically. To avert their wrath, she acceded to their extortionary demands. *Id.* at 734–36. We held that her persecution was motivated not only by economic extortion, but also by political opinion. *Id.* at 736. We based this conclusion upon the temporal sequence: "We know that the NPA agents acted in direct response to her statement of political opposition and revulsion at their methods because their immediate reaction was to 'get mad' and point a gun at her." *Id.*

Likewise, in *Gonzales–Neyra v. INS,* the petitioner was initially chosen as a target for extortion because of his wealth, but once he told the extortionists that he refused to support the Shining Path, they threatened to kill him. 122 F.3d 1293, 1296 (9th Cir.1997), *as amended,* 133 F.3d 726 (1998). "[T]he fact that the guerrillas may have initially chosen Gonzales–Neyra as a target for money because he was a successful businessman" did not prevent us from finding that his persecution was on account of political opinion. *Id.* at 1296.

Bortnikov's situation is closely parallel. Although Bortnikov was initially approached in an attempt to confiscate the tape, his subsequent persecution was based at least in part on the political opinion that he voiced. Like Borja, Bortnikov's statement of political opinion was met with an immediate escalation of hostility. "Only by closing one's eyes to the escalating nature of this confrontation could one see the ensuing events as strictly economic with no political component." *Borja,* 175 F.3d at 737.

Moreover, although the majority is correct in stating that the attack of someone who is Jewish by an anti-Semitic organization is not alone sufficient to establish persecution on account of religion, here, Pamyat members used anti-Semitic slurs on a number of occasions while issuing threats to Bortnikov's family that he would be killed if he returned to Russia. This evidence compels the conclusion that Bortnikov's Jewish ancestry was a factor in the ongoing threats, lending an additional element of hatred and willingness to commit violence to the actions of this anti-Semitic organization.[1] *See, e.g., Duarte de Guinac v. INS,* 179 F.3d 1156, 1162 (9th Cir.1999) (noting that on account of prong was satisfied where persecution was "coupled with explicit expressions of ethnic hatred"); *Maini v. INS,* 212 F.3d 1167, 1176 (9th Cir.2000) (finding on account of prong to be satisfied by beatings coupled with explicit expressions of religious hatred).

Because "the evidence compels a finding that [protected characteristics of the petitioner were] a significant motivation for the violence and abuse he endured," *Hernandez–Montiel v. INS,* 225 F.3d 1084, 1096 (9th Cir.2000), Bortnikov has demon-

---

1. The INS implies that the absence of evidence that Bortnikov legally adopted his mother's Jewish nationality renders him insufficiently Jewish to suffer from anti-Semi-tism. Brief for Respondent, 27 n. 9. This suggestion reflects a troubling lack of understanding of the history of Eastern European and Russian anti-Semitism.

strated that he suffered past persecution. This showing of past persecution raises an unrebutted presumption that Bortnikov would be in danger of persecution upon return to Russia. *Borja,* 175 F.3d at 737–38. Thus, I would conclude that Bortnikov is eligible for asylum and grant the petition.