NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0393n.06

No. 09-3028

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 29, 2010**

LEONARD GREEN, Clerk

MAO WEN DONG,                                  )
                                               )
          Petitioner,                          )
                                               )
v.                                             )     On Petition for Review of a Final
                                               )     Order of the Board of Immigration
ERIC H. HOLDER, JR.,                           )     Appeals
                                               )
          Respondent.                          )

Before:  BOGGS and COOK, Circuit Judges; and COLLIER, District Judge.[*]

BOGGS, Circuit Judge.  Mao Wen Dong ("Dong"), a native and citizen of China, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from the decision of an Immigration Judge ("IJ").  The IJ's decision denied Dong asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), which Dong sought on the theory that he would potentially face persecution upon removal to China because his wife had been forcibly sterilized for violating China's one-child policy.  In his appeal to the BIA, Dong added a new theory.  He argued that his removal proceedings should be reopened because, if he were returned to China, he would potentially face persecution for violating Chinese emigration laws.  In rejecting this argument, the BIA held that Dong had failed to establish prima facie eligibility for relief from removal.  Dong argues that this holding was improper for two reasons.  First, he argues that, in

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

determining that he had failed to make out a prima facie case of eligibility for withholding of removal, the BIA held him to an erroneously heightened standard of proof, requiring him to demonstrate that he would be, rather than would more likely than not be, subject to persecution upon removal to China. Second, he argues that the BIA's decision failed to address his contention that he belonged to a particular social group comprised of Chinese citizens who have illegally emigrated from their native country. For the following reasons, we deny Dong's petition for review.

I

On June 10, 2001, Dong, a married father of two, departed China from the Changle City Airport. He flew first to Hong Kong and then to Thailand, where he remained for twenty days before flying to Paris, France. He spent ten days in Paris and then flew to Canada. After five days of waiting, Dong, assisted by a smuggler, took a motorboat across a section of the United States-Canada border that runs along a river. Once ashore in the United States, he boarded a van bound for New York City, which he allegedly reached on July 15, 2001.

On June 19, 2002, Dong filed an application for asylum, withholding of removal, and protection under CAT.[1] Dong's application was based on his fear of being persecuted for violating China's one-child policy. In his application, he alleged that, shortly after the birth of his second child, Chinese family-planning officials had entered his home, seized his wife, and taken her away

---

[1] Dong's application for asylum and withholding of removal does not actually specify that he was also seeking protection under CAT. However, at the hearing on the merits of Dong's application, he asserted that he also sought CAT relief.

for forcible sterilization. He also claimed that he left China to pursue a "free life" and that, if he were removed to China, he would "continue to be persecuted under the [family-planning] policy."

On May 18, 2007, almost five years after Dong's application for relief from removal was filed, a hearing was held. During the hearing, Dong testified about the circumstances of his wife's forcible sterilization and the details of his emigration from China. Dong's cousin-in-law, Lin Qing Hao, corroborated portions of Dong's account, testifying that the two had met in New York City on July 15, 2001.

At the conclusion of the hearing, the IJ issued an oral decision denying Dong's application. The IJ concluded that neither Dong nor his corroborating witness was credible. The IJ also held that Dong had failed to show "by clear and convincing evidence that the application for asylum was filed within one year after his arrival in the United States." However, the IJ's holding with respect to the timeliness of Dong's application was not the only basis for his decision. The IJ found, in addition, that Dong was ineligible for asylum because he had "demonstrated that he does not fear persecution and in fact that the only reason he came to the United States was to earn more money and make a better life for his family, not to escape persecution as he claimed in his application for asylum." With respect to his withholding-of-removal and CAT claims, the IJ found that Dong had failed to make out the substantive elements:

> With regard to [Dong's] claim for withholding of removal, [he] has presented no evidence to suggest that it is more likely than not that his life or freedom would be threatened on any basis . . . were he returned to the People's Republic of China. Likewise, [he] has presented no evidence whatsoever to suggest that were he returned to the People's Republic of China he would be subject to torture by, at the instigation of, or with the acquiescence of the government of the People's Republic of China.

Dong was consequently ordered removed.

On June 4, 2007, Dong appealed the IJ's decision to the BIA. In his brief, Dong argued that the IJ's adverse credibility determination was improper. He also argued, for the first time, that he was a member of a particular social group comprised of Chinese citizens who had illegally emigrated from China and that, if he were returned to China, he would likely face persecution and torture on account of his membership in that group. Dong's argument drew extensively from the Seventh Circuit's opinion in *Lian v. Ashcroft*, 379 F.3d 457, 461 (7th Cir. 2004), which remanded a case for consideration of "a huge mass of evidence" that the petitioner would more likely than not be tortured upon removal to China for violating emigration laws. Dong requested that the BIA take administrative notice of the evidence listed in Lian, and, on the basis of that evidence, he requested that the BIA "reopen[]" his removal proceedings to allow him to apply for "asylum and withholding."

On December 16, 2008, the BIA issued a decision dismissing Dong's appeal. In its decision, the BIA stated that it found "no error in the pretermission of the respondent's asylum application on the ground that it had not been filed within 1 year of the respondent's last arrival in the United States." The BIA's decision then considered whether, if his application were timely, Dong would be entitled to relief on the basis of "his wife's forcible sterilization after the birth of their second child." In answer to this question, the BIA stated that, "based on intervening precedent, the respondent's claim fails to state a basis for asylum or withholding of removal." As a consequence, the BIA did not "reach the question of whether the Immigration Judge's adverse credibility finding [was] clearly erroneous."

No. 09-3028
Mao Wen Dong v. Eric H. Holder, Jr.

The BIA's decision then analyzed Dong's request for relief from removal on the basis of his fear that, upon returning to China, he would be persecuted for violating emigration laws. In rejecting his request, which the BIA appears to have construed as a motion to reopen his removal proceedings,[2] the BIA stated that Dong had "not established prima facie eligibility for relief from removal, due to his alleged violation of the Chinese exit laws." As grounds for this conclusion, the BIA indicated:

> The documentary evidence submitted by the respondent is insufficient to support his claim that he would be persecuted by the Chinese government for illegally emigrating to the United States. We are further unable to identify any evidence that establishes that the respondent has a well-founded fear of persecution or would likely suffer torture in his country . . . .

On January 9, 2009, Dong petitioned this court for review of the BIA's decision. In his petition, Dong argues that the BIA committed two errors with respect to his request for withholding of removal on the basis of his alleged violation of Chinese emigration laws. First, he contends that the BIA applied the wrong standard of proof when rejecting his withholding claim. Second, he

---

[2]Because Dong did not make this request before the IJ, the BIA would only have been able to consider it pursuant to a motion to reopen. While the BIA's decision does not actually state that Dong's new request for withholding was construed as a motion to reopen, there are two strong clues that it was. First, in his brief on appeal to the BIA, Dong specifically requested that the BIA reopen his removal proceedings to allow him to present evidence that illegal Chinese emigrants face a possibility of persecution. Second, the BIA's rejection of Dong's request was premised on his inability to establish a prima facie case of eligibility for withholding, which is a threshold requirement for reopening. *See Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986) ("[A] motion to reopen should not be granted unless the petitioner makes a prima facie showing that the statutory requirements for the underlying relief have been met."). If the BIA had been evaluating Dong's request for withholding as part of his original application for relief, the BIA would not have been concerned with whether Dong had succeeded in establishing a prima facie case. Rather, the BIA would simply have analyzed whether he had succeeded in showing actual eligibility for the requested relief.

- 5 -

asserts that the BIA failed to evaluate his claim that he should be considered a member of a particular social group comprised of Chinese citizens who emigrated illegally. Following a brief discussion of the standard of review, we evaluate and reject each of these arguments in turn.

II

Assuming that the BIA construed Dong's request for withholding as a motion to reopen,[3] the applicable standard of review is abuse of discretion. *See Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to law." *Ibid.* Application of the wrong standard of proof is an abuse of discretion. *See Hamoui v. Ashcroft*, 389 F.3d 821, 827 (9th Cir. 2004) ("We find that the BIA abused its discretion in denying [petitioner's] motion to reopen . . . [because it] used the wrong standard of proof for relief under the Convention Against Torture."). Additionally, "[i]n determining whether the [BIA] abused its discretion, this [c]ourt must decide whether the denial of Petitioner's motion to reopen . . . was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination . . . ." *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

---

[3]We need not actually decide the question of whether the BIA determined that Dong's request for withholding of removal should be treated as a motion to reopen because, even if the BIA treated Dong's request as part of his initial application, the BIA's determination would be subject to reversal only if it were "manifestly contrary to law." *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(C)). This standard is, if anything, more deferential than the abuse-of-discretion standard applicable to the BIA's denial of a motion to reopen. Under that standard, the BIA's decision will be reversed if it is merely "contrary to law." *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). Consequently, because we hold that the BIA has not abused its discretion, it follows that the BIA's decision is not manifestly contrary to law.

III

Dong's first argument is that the BIA applied the wrong standard of proof when evaluating his application for withholding of removal. His argument is premised on the BIA's statement that "[t]he documentary evidence [he] submitted . . . is insufficient to support his claim that he *would be persecuted* by the Chinese government for illegally emigrating to the United States." (emphasis added). Seizing upon this language, Dong notes that, under the correct standard of proof, withholding of removal is appropriate where an applicant "can establish that it is *more likely than not that he or she would be persecuted* on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to [his or her] country [of nationality]." 8 C.F.R. § 1208.16(b)(2) (emphasis added). Dong thus contends that the BIA improperly held him to a heightened burden and that this court should therefore vacate and remand to allow the BIA to apply the correct standard.

But it is not as simple to conclude that the BIA applied the wrong standard as Dong contends. As a number of our sister circuits have observed, it is very easy to substitute mistakenly the term "would be persecuted" for a term such as "would more likely than not be persecuted." *See Florez-de Solis v. INS*, 796 F.2d 330, 334 n.2 (9th Cir. 1986) ("Although we do not condone replacing 'of persecution' with 'would be persecuted' in stating the 'well-founded fear' standard, we note that it is an easy mistake to make . . . ."); *see also Rodrigues v. U.S. Att'y Gen.*, 237 F. App'x 497, 503 (11th Cir. 2007) (noting the occasional use of "will" or "would" as shorthand for "more likely than not"). Indeed, in everyday conversation, terms like "would" and "will" are often interchangeable with terms like "would more likely than not" and "will more likely than not." For example, a college

basketball fan might say: "If Duke makes it through the deadly South Regional, they will win the Final Four." Typically, the speaker will not be understood to have guaranteed a victory. Rather, he will be understood to have stated that a victory is likely. Consequently, in the context of asylum claims, the Ninth Circuit has concluded that, by itself, "use of the word 'would' is not dispositive of whether the proper standard was applied." *Florez-de Solis*, 796 F.2d at 334 n.2. We agree with the Ninth Circuit's approach and note that courts "must look to the entire opinion . . . to determine whether the BIA applied the correct standard [of proof]." *Id.* at 334.

Looking to the opinion as a whole, we find that the BIA did not apply an incorrect standard of proof. As an initial matter, we observe that the statement to which Dong objects does not actually state that he must show that he would be persecuted in order to obtain withholding of removal, a circumstance that cuts against him in light of our prior decisions. *See Nerghes v. Mukasey*, 274 F. App'x 417, 424 (6th Cir. 2008) (observing that, in the context of CAT claims predicated on willful blindness, courts typically find that the BIA applied the wrong standard only when the decision used language that was "patently inconsistent" with the correct standard). In fact, the statement in question does not even use the term "withholding of removal." Rather, it simply indicates that Dong's evidence does not "support his claim that he would be persecuted by the Chinese government for illegally emigrating to the United States." Given Dong's assertions in his brief to the BIA that he "is subject to persecution" and that "harm will befall him," we think it clear that the BIA's statement is simply an echo of Dong's own language, which described the probability that he would be persecuted in somewhat loose terminology. Therefore, Dong's assertion of error on the part of

the BIA is weakened from the outset, given his inability to show that the BIA's statement is a clearly improper articulation of the relevant legal standard.

The context of the BIA's statement also makes it apparent that the BIA was not applying the wrong standard of proof. In the sentence immediately preceding the BIA's use of the term "would be persecuted," the BIA cited its decision in *In re J-W-S-*, 24 I. & N. Dec. 185, 195 (BIA 2007), which held that Chinese citizens who repatriate for the first time after illegally emigrating face only fines. The clear implication of the BIA's citation, which is made more apparent in the accompanying parenthetical,[4] is that Dong would face only a fine upon returning to China, and "[a] fine for illegal departure would not amount to persecution." *Ibid.* As a result, we think the BIA's statement that Dong's evidence failed to establish that he "would be persecuted" is best read to mean that Dong's evidence failed to establish that he faced "any possibility of persecution."

In addition to the context of the BIA's statement, the BIA's citation of a case articulating the correct standard of proof weighs in favor of the conclusion that the standard was properly applied. Discussing Dong's claims with respect to his wife's forcible sterilization, the BIA cited, *inter alia*, the Second Circuit's decision in *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007) (en banc). In *Lin*, the Second Circuit noted that withholding of removal is appropriate when a petitioner demonstrates that it is "more likely than not" that he would be prosecuted. *Id.* at 315. Because *Lin* contains an articulation of the appropriate standard, we can infer that the BIA was aware

---

[4]The parenthetical states: "[E]vidence on country conditions in 2002 and thereafter continues to reflect that persons repatriated to China generally face fines upon return and that only after a second repatriation does an individual face harsher punishment such as a possible term in a reeducation-through-labor camp."

of that standard, which, in turn, increases the likelihood that the BIA applied it properly and simply used the term "would be persecuted" as shorthand.

Potentially cutting against the conclusion that the BIA applied the proper standard of proof is the BIA's use of the term "would likely" when describing the probability that Dong would face torture upon removal to China. We are mindful of the argument that the inclusion of this term in the BIA's discussion of torture indicates that the term's omission from the discussion of persecution was intentional, thus demonstrating that the BIA held Dong's withholding claim to an erroneously heightened standard of proof. However, we reject this conclusion. We note that the term "would likely" is not a correct articulation of the standard of proof applicable to claims for protection under CAT. Rather, CAT relief is appropriate where an applicant shows that he "would more likely than not be tortured if removed to the country in question." *Hanna v. Holder*, 335 F. App'x 548, 552 (6th Cir. 2009) (citing 8 C.F.R. § 1208.16(c)(2)). Therefore, if anything, the BIA's use of the term "would likely" actually reinforces the conclusion that the BIA is referring to the applicable standards of proof in shorthand.[5]

In light of the foregoing indications that the BIA was setting forth the pertinent legal standards in abbreviated form, we conclude that the BIA's use of the term "would be persecuted" in lieu of the term "would more likely than not be persecuted" does not demonstrate that the BIA

---

[5]A similar inference may be drawn from the BIA's reference to 8 C.F.R. § 1208.16(c), which sets forth the standard governing eligibility for withholding of removal under CAT. This provision is contained in the same section that governs eligibility for withholding of removal under the INA. Consequently, the citation provides grounds for inferring that the BIA was aware of the proper more-likely-than-not standard.

subjected Dong's withholding claim to a heightened burden of proof. While we do not endorse the imprecise articulation of legal standards, we cannot say that the BIA's error in this case was anything more than referring to the standard of proof in a slightly ambiguous fashion.

IV

Dong also argues that the BIA erred by failing to make any explicit findings on the issue of whether he belonged to a "particular social group" for purposes of 8 C.F.R. § 1208.16(b).[6]  In support of this proposition, he cites *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), noting that an agency's decision cannot be upheld if it provides no reasoned basis for the agency's actions. While Dong is correct in suggesting that the BIA is obliged to provide a rational explanation for its decision, *see Balani*, 669 F.2d at 1161 (holding that the BIA abuses its discretion if it denies a motion to reopen without providing a rational explanation), he is incorrect in implying that the BIA must address his claim of membership in a particular social group to do so.

As this court recognized in *Yan Xia Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008), the BIA is not required to "mention every piece of evidence before it or every logical element of a motion." Rather, the BIA is only required to analyze and explain the basis of its decision. *Ibid.* In other words, if an applicant must demonstrate both X and Y to make out a prima facie case of eligibility for relief, and the BIA determines that he has failed to demonstrate Y, then the BIA is

---

[6]The BIA has construed the term "particular social group" to mean "a group of persons all of whom share a common, immutable characteristic." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

under no obligation to discuss the applicant's contention that he has shown X. The BIA must only explain why the applicant is unsuccessful in proving Y.

Dong's case presents precisely the same situation. To establish a prima facie case of eligibility for withholding of removal, Dong was required to demonstrate both that he was a member of a particular social group (X) and that he would more likely than not face persecution in China on account of his membership in that group (Y). In deciding that Dong had failed to meet his burden, the BIA rested its holding on Dong's failure to demonstrate the requisite probability of persecution. Once the BIA reached this conclusion, the question of Dong's membership in a particular social group became irrelevant, and the BIA was not required to address it. As a result, the BIA's silence on the issue was not an abuse of discretion.

V

Because the BIA applied the correct standard of proof and provided a rational explanation for its decision, it did not abuse its discretion in holding that Dong had failed to demonstrate his eligibility for withholding of removal. Thus, we DENY Dong's petition for review.