849 F.2d 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Masoud DAOUD, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 87-3161.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and JULIAN A. COOK*, District Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Masoud Daoud ("Daoud"), appeals from the decision of the Board of Immigration Appeals ("Board") denying his application for withholding of deportation under Sec. 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. Sec. 1253(h), as amended, and for asylum under Sec. 208(a) of the Act, 8 U.S.C. Sec. 1158, as amended. We find that the administrative record supports the Board's decision, and will therefore affirm.
 
 
 2
 Daoud presents to this court a purported basis to grant his application for relief in the form of affidavits which were offered neither to the immigration judge nor to the Board, nor made the subject of a motion to reopen the underlying proceedings. These affidavits presented to this court assert that Daoud will be subject to persecution and potential murder as the result of the combined factors of his Christian and Chaldean background and his potential for being drafted into the Muslim war between Iran and his native country, Iraq. We decline to take these affidavits into account since they were not presented during the administrative proceedings despite a reasonable opportunity to do so.
 
 
 3
 Daoud, a forty-one year old, college educated native and citizen of Iraq, most recently entered the United States on July 5, 1982 as a nonimmigrant visitor for pleasure with authorization to remain through April 10, 1983. Daoud had previously visited the United States in 1981 for 90 days on a visitor's visa. At the time of Daoud's return to the United States in 1982, Iraqi airport officials signified approval of his departure in his passport, which was valid until 1984. Daoud admittedly experienced no difficulties with the Iraqi government while in Iraq. His wife and three minor children are now lawful permanent residents of the United States as the result of a fifth preference visa petition filed by her brother, a United States citizen. Daoud has other relatives living in the United States.
 
 
 4
 In February of 1984, the Immigration and Naturalization Service ("INS") learned that Daoud had not only overstayed his visa limit, but also was apparently employed in contravention of the terms of his nonimmigrant visa. Daoud was served with an Order to Show Cause on why he should not be deported under INA, 8 U.S.C. Sec. 1251(a)(2) or 8 U.S.C. Sec. 1251(a)(9).
 
 
 5
 A hearing was conducted before an immigration judge on March 6, 1984, during which Daoud, represented by counsel, conceded deportability on the basis of overstay but requested an opportunity to file an application for withholding of deportation or asylum, or in the alternative, voluntary departure. The immigration judge granted Daoud a continuance to prepare and file the application.
 
 
 6
 The immigration judge reconvened the hearing on June 7, 1984 to consider Daoud's application for withholding of deportation or asylum.[1] In his application, Daoud stated that he feared conscription into the Iraqi military, and felt his life to be in danger "due to some of the expression [sic]" of his "as to the government of Iraq." As to whether he had taken any actions which he believed would result in persecution in Iraq, Daoud stated on the form his concerns as to "some of my thoughts about the government of Iraq and about the fighting." In addition, Daoud indicated that his ethnic and religious background as a Christian Chaldean would result in a greater effect on his freedom than that experienced by the general population of Iraq, although he did not state why this would be so. However, Daoud stated that he had "no trouble while in the country" with Iraqi authorities because of race, religion, nationality, political opinion or membership in a particular social group.
 
 
 7
 At the hearing on June 7, 1984, Daoud, again represented by counsel, gave conclusory and nonspecific testimony regarding his fear that he would be harmed in some way or lose his freedom, first because he feared being drafted into the Iran/Iraq war which had become more intense during his stay in the United States, and secondly, because he feared retaliation for having remained in the United States for two years and for having requested asylum. Daoud, however, never articulated any basis for his fears with regard to military induction, leaving the impression that he was simply afraid of being engaged in combat. In fact, Daoud testified that had his wife and children not come to the United States to be with relatives, he would have remained in Iraq and been "faced with no problems." At no time during the hearing did Daoud link his fear of military service with his Christian Chaldean heritage.
 
 
 8
 Daoud's application was submitted to the Bureau of Human Rights and Humanitarian Affairs ("BHRHA") of the United States State Department for an opinion regarding his request for asylum. The BHRHA opined that Daoud did not qualify for a grant of asylum because his fear of military service was not a "well-founded fear of persecution" within the meaning of the United Nations Convention and Protocol Relating to the Status of Refugees.
 
 
 9
 The immigration judge found Daoud deportable both for overstay and for unauthorized employment and denied his application for asylum or withholding of deportation. He did grant him the option of voluntary departure within thirty days. The immigration judge concluded that Daoud had failed to establish by "some objective specific evidence that he would be singled out for individualized adverse treatment on account of race, religion, political opinion, membership in a particular social group or nationality" and that he had also "failed to establish that he would suffer persecution or loss of life or freedom as those conditions are meant ... in the United Nations Protocol."
 
 
 10
 Daoud appealed the immigration judge's adverse decision, contesting the finding of unauthorized employment and arguing that the immigration judge improperly did not credit Daoud's testimony that he feared for his life in the event of being drafted into the Iraqi army and did not consider drastic changes in conditions in Iraq while Daoud had been in the United States nor the presence of his wife and children in the United States. The Board dismissed the appeal, upholding the immigration judge's determination of deportability based upon unauthorized employment and his denial of asylum and withholding of deportation. The Board concluded that "mere unwillingness to perform military service in one's country is insufficient to establish eligibility for asylum." The Board also noted that the status of Daoud's wife and children was irrelevant in the context of Sec. 243(h) and Sec. 208(a) because Daoud had made no application for adjustment of his status as a relative of a lawful permanent resident alien. Although 8 C.F.R. Sec. 242.17(a) imposed the obligation of informing an alien of his apparent eligibility for adjustment of status upon the immigration judge ("special inquiry officer"), the immigration judge did not breach this duty by failing to so inform Daoud, according to the Board, because his eligibility was questionable given his unauthorized employment. Title 8, U.S.C. Sec. 1255, the provision of INA which provides for adjustment of status, is inapplicable to an alien who engages in unauthorized employment. 8 U.S.C. Sec. 1255(c).
 
 
 11
 On appeal, Daoud challenges the Board's affirmance of the immigration judge's denial of his grant of asylum, contending that its determination that Daoud failed to establish a well-founded fear of persecution is contrary to the weight of the evidence. He argues on appeal that he may be murdered by Muslim Iraqi soldiers after being inducted into the Iraqi army because of his Christian Chaldean origins. Daoud reiterates his contention that he will be persecuted for his absence from Iraq, his failure to serve in the army during that absence, and his attempt to gain asylum. Finally, Daoud informs us that he is now the beneficiary of an approved visa petition with a March 20, 1986 priority date which is current at present. In support of his claims, Daoud attached to his brief the two affidavits we have previously discussed.
 
 
 12
 Under Sec. 208(a), the Attorney General may, in his discretion, grant asylum to an alien if he establishes a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. Sec. 1101(a)(42)(A). Under Sec. 243(h), the Attorney General must grant relief from deportation if he "determines that such alien's life or freedom would be threatened in such country" on account of the same factors above listed. I.N.S. v. Stevic, 467 U.S. 407, 424 (1984), has construed Sec. 243(h) as requiring the alien to show "a clear probability of persecution," or, in other words, that it is "more likely than not that [he] would be subject to persecution" if he were to return to his homeland. Establishment of a well-founded fear does not require a showing that persecution is more likely than not upon return to the alien's home country. I.N.S. v. Cardoza Fonseca, 107 S.Ct. 1207, 1222 (1987). Under both Sec. 208(a) and Sec. 243(h), the burden is upon the alien seeking either asylum or relief from deportation to demonstrate his "well-founded fear" or "clear probability" of persecution. Gumbol v. I.N.S., 815 F.2d 406, 408-09 (6th Cir.1987).
 
 
 13
 This court's jurisdiction to review final orders of deportation is provided by 8 U.S.C. Sec. 1105a. 8 U.S.C. Sec. 1105a(4) provides in part:
 
 
 14
 [T]he petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial and probative evidence on the record considered as a whole shall be conclusive.
 
 
 15
 (Emphasis added). In Gumbol, we utilized an abuse of discretion standard for review of denials of both Sec. 243(h) relief and Sec. 208(a) relief, although it was couched in terms of the sufficiency of the evidence. On other occasions we have applied a substantial evidence standard to a denial of Sec. 243(h) relief and to the factual underpinnings of a denial of Sec. 208(a) relief, while at the same time indicating that the ultimate decision to grant or deny asylum, once the fact-based well-founded fear was determined to exist, would be examined for abuse of discretion. See Youkhanna v. I.N.S., 749 F.2d 360, 362 n. 2 (6th Cir.1984); Yousif v. I.N.S., 794 F.2d at 242-44. We believe these earlier cases set forth the preferable standard.
 
 
 16
 As to denial of the Sec. 208(a) request for asylum, other courts have followed the two-tiered analysis implicitly recognized in Youkhanna. See Carvajal-Munoz v. I.N.S., 743 F.2d 562, 567-68 (7th Cir.1984); Florez-De Solis v. I.N.S., 796 F.2d 330, 333 (9th Cir.1986). We first, then, review the Board's decision whether the alien has a well-founded fear for support by a substantial evidence standard because that determination is essentially one of fact and is governed by 8 U.S.C. Sec. 1105a(4). If the Board finds preliminarily that an alien has a well-founded fear of persecution but nonetheless decides to deny the alien asylum in the exercise of its discretion, that decision should be reviewed for abuse of discretion. In the present case, the issue is whether the Board's decision is supported by substantial evidence.
 
 
 17
 In order to meet the burden of demonstrating a clear probability of persecution to qualify for Sec. 243(h) relief, an alien must present specific facts authenticated by credible evidence to show that it is more likely than not that he as an individual will be subject to persecution if forced to return to his native land. The well-founded fear of persecution standard under Sec. 208(a) is less stringent because "an alien requesting asylum merely seeks to be found eligible for a discretionary grant of asylum, rather than claiming entitlement to a withholding of deportation," Yousif, 794 F.2d at 244. See also Cardoza Fonseca, 107 S.Ct. at 1213, 1219. The alien must still, however, "present some specific facts, either through objective evidence or through persuasive credible testimony, to show that [his] fear of persecution is 'well founded.' Youkhanna, 749 F.2d at 362." Gumbol, 815 F.2d at 412.
 
 
 18
 We find Daoud's appeal of the Board's denial of asylum to be without merit. His claims of fear of persecution as presented to the immigration judge and to the Board are either not substantiated by specific facts or are based upon factors not provided for in Sec. 208(a).[2] Although his testimony alone, if consistent, persuasive and credible, could support a claim for asylum, it must include a description of specific events demonstrating actual persecution or "giving rise to an inference that the applicant has been or has a good reason to fear that he ... will be singled out for persecution on one of the specified grounds." Carvajal-Munoz, 743 F.2d at 574. We find no error in the Board's assessment of the evidence in this case.
 
 
 19
 Daoud's case and personal situation is akin to that of the applicant in Yousif. Yousif, too, argued that he would be persecuted because of his "Chaldean Christian background, his absence from Iraq, his criticism of the Baath regime and his application for asylum. He also stated that were he to return to Iraq, he would be drafted into the army." 794 F.2d at 239. While Yousif presented little evidence to substantiate his claims, he surpassed Daoud in this regard by presenting evidence that he and several members of his family had suffered beatings and imprisonment for refusal to join the Baath party. In affirming the Board's denial of a motion to reopen, we concluded that Yousif's allegations, with no evidence to support his claim of individual persecution, nor any evidence demonstrating that Christian Chaldean's as a group suffered from persecution, were insufficient to satisfy either Sec. 243(h) or Sec. 208(a).
 
 
 20
 We sympathize with the plight of Daoud's family, but his potential separation from his family is not a relevant consideration given the present posture of this case. His family's status is relevant to an application by him for adjustment of status, but that is not a matter before us. The fact that he is unwilling to retrieve his visa from Iraq does not further Daoud's case.[3]
 
 
 21
 Accordingly, we AFFIRM the Board's decision in all respects.
 
 
 
 *
 THE HONORABLE JULIAN A. COOK, JR., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Daoud actually submitted a Request for Asylum Form I-589. Such a request is also treated as a request for withholding of deportation. 8 C.F.R. Sec. 208.3(b); Yousif v. I.N.S., 794 F.2d 236, 241-42 (6th Cir.1986)
 
 
 [2]
 Daoud appears to appeal only the Board's denial of his request for asylum, contending that the finding that he did not meet the test of establishing a well-founded fear of persecution is contrary to the weight of the evidence. Petitioner's Brief at 1. However, in the conclusion of his brief, Daoud argues that he sustained his burden of demonstrating a clear probability of persecution, the test for Sec. 243(h) relief. Implicitly, therefore, Daoud appeals both prongs of the Board's decision
 
 
 [3]
 As the Board noted, INS regulations require the immigration judge or special inquiry officer to advise an alien of his apparent eligibility for adjustment of status. 8 C.F.R. Sec. 242.17. However, at the time of the hearing, Daoud did not appear to be eligible; he was alleged to have engaged in unauthorized employment, which would render him ineligible for adjustment of status under 8 U.S.C. Sec. 1255(c)