**Yorsalem GEBRENDRIAS, Petitioner,**

**v.**

**John D. ASHCROFT, Respondent.**

No. 02–4254.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 2003.

Decided Oct. 14, 2003.

Before FLAUM, Chief Judge, BAUER, and MANION, Circuit Judges.

### ORDER

Yorsalem Gebrendrias appeals from the order of the Board of Immigration Appeals (BIA) affirming, without opinion, the decision of the Immigration Judge (IJ) to deny her application for asylum. She also brings a procedural challenge to the BIA's use of the "streamlined" review process. We affirm.

Gebrendrias, an Ethiopian woman who purports to be of Oromo descent, entered the United States under a non-immigrant visa in December 1995, and bases her asylum claim upon her alleged fear that, as a member of the Oromo ethnicity and a member of the Oromo Liberation Front (OLF), she will face persecution if returned to Ethiopia. Gebrendrias applied for asylum with the Immigration and Naturalization Service (INS) in March 1998. The asylum officer responsible for her application found her story incredible because key details of her testimony conflicted with her written application for asylum, and because he had found notes under Gebrendrias' chair written in Trigrinya, a language of the Tigres ethnicity that Gebrendrias claims not to speak. Those notes contained statements like "[d]on't forget to mention your father was fired." The asylum officer found that Gebrendrias had failed to establish her identity as an Oromo, denied her application, and referred her for removal proceedings.

In subsequent proceedings before the IJ, Gebrendrias presented the testimony of four witnesses. Gebrendrias herself testified that, after her father lost his government job because of his status as an Oromo, the family moved to a region heavily populated by Oromos and joined the OLF. According to Gebrendrias's testimony, the Ethiopian government imprisoned and killed both her father and brother for their participation in the group, imprisoned her mother, and imprisoned and raped Gebrendrias herself. The Rev. John L. Halvorson, who travels to Ethiopia as part of his missionary work, testified that Oromos in Ethiopia suffer chronic political and economic persecution. Kiros Tewolde Gabriel testified that the notes found at the asylum office were hers. Gebrendrias also presented a letter with a seal, written in English, that contained the following text: "March 18, 1998, To Whom It May Concern, This is to confirm that Eyerusalem Menariam Gebrendrias is a member of our front, sincerely, Jemal Mussa, Central zone OLF head." Berhane Haile testified that he had forwarded the OLF letter from his father to Gebrendrias, but that he did so without opening it.

The government attacked Gebrendrias's claim to be a member of the OLF by presenting the testimony of Larry F. Ziegler, an expert with more than 30 years' experience in the field of forensic document examination, specializing in African documents. Gebrendrias did not object to the introduction of Ziegler's testimony. Ziegler testified that the seal of the letter that Gebrendrias presented as proof of her status in the OLF was not made as would typically be done in Ethiopia. Instead, the seal was photocopied, which "raise[d] a red flag" because photocopiers are scarce in Ethiopia. Ziegler also noted that: the paper size of the letter was unusual for Ethiopia; the letter's text contained American spacing, which is rare for Ethiopia; the letter contained no security features; and, the seal was blurred and illegible.

Based on this testimony, the IJ concluded that Gebrendrias's letter purportedly showing her to be a member of the OLF was phony, and her testimony was therefore incredible. That conclusion was fatal to Gebrendrias's case because her testimony was the only evidence that, if true, would have shown that she had a history of persecution and, by implication, a well-founded fear of future persecution if returned to Ethiopia. The BIA affirmed the IJ's denial of relief without an order under its streamlined procedure.

 The first argument that Gebrendrias raises on appeal is that "Mr. Ziegler's testimony [wa]s prohibited by Fed.R.Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)." We disagree because "[t]he traditional rules of evidence do not apply in immigration hearings." *Henry v. INS*, 74 F.3d 1, 6 (1st Cir.1996). Instead, the sole test for admission is whether the evidence is "probative" and "fundamentally fair." *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir.1995).

 Gebrendrias second argument is that, even judging Ziegler's testimony by the standard of whether it is probative and fundamentally fair, it should not have been admitted because it was "fundamentally unfair." She maintains that Ziegler "had never been to Ethiopia, that he was not familiar with the OLF, that he has never seen any documents that were produced by [the] OLF, that he had no personal experience as to how they put their documents together, that he examined the document without giving any consideration that [the] OLF is an underground guerrilla organization fighting the government, and that it was possible that an American spaced typewriter existed in Ethiopia." We do not see how any of those observa-

tions render the admission of Ziegler's testimony fundamentally unfair. Gebrendrias was able to point out all of these purported flaws in Ziegler's background to the IJ, but did not do so. Moreover, the factual observations that Ziegler made—that the paper size, photocopying of the seal, and spacing of the type, etc. were unusual for a document produced in Ethiopia—were all based on knowledge that one could obtain without visiting Ethiopia and without being familiar with the OLF. In short, Ziegler's testimony was probative of whether the purported letter from the OLF was, as Gebrendrias claimed, produced in Ethiopia, and Gebrendrias points to no evidence showing that Ziegler was unqualified to render the observations that he made before the IJ. We hold that the admission of Ziegler's testimony was both probative and fundamentally fair.

 Gebrendrias next contends that, assuming the admissibility of Ziegler's testimony, the IJ erred in giving that testimony full evidentiary weight and in concluding that Gebrendrias's testimony was therefore incredible. We review the IJ's credibility findings under the substantial evidence standard. *Bradvica v. INS*, 128 F.3d 1009, 1012 (7th Cir.1997). The IJ's credibility determination will be affirmed when it is supported by "specific cogent reasons" that "bear a legitimate nexus to the finding." *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir.1999). As discussed above, a reasonable person could credit Ziegler's testimony and conclude that the letter purportedly from the OLF was unusual for a document produced in Ethiopia. That conclusion would support the inference that Gebrendrias presented a phony document to the IJ, and that she was therefore an incredible witness. It is possible, as Gebrendrias argues, that the letter is both authentic and unusual for a document written in Ethiopia. But it is

her burden to prove authenticity and not, as she seems to argue, for the government to disprove it. *See Daoud v. INS,* No. 87–3161, 1988 WL 65535, at *4 (6th Cir. June 27, 1988). In support of her position, however, Gebrendrias adduced nothing more than her own testimony. On the state of the record, we hold that a reasonable person could find, as did the IJ, that: (1) the letter purportedly from the OLF was unusual for an Ethiopian letter; (2) the letter was, therefore, likely not genuine; and (3) the person who introduced the letter, Gebrendrias, was not a credible witness.

We turn finally to Gebrendrias's argument that the streamlined procedure under which the BIA affirmed the IJ was improper. Under the streamlined procedure found in 8 C.F.R. §§ 1003.1, 1003.2 (2003), the BIA may affirm without opinion in cases in which one BIA member "determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial," and that the issues on appeal are either clearly governed by precedent or not substantial. Here, the BIA's use of the streamlined procedure did not harm Gebrendrias: her appeal is fact-dependent and, "[s]ince we review directly the decision of the IJ when a case comes to use from the BIA pursuant to [the streamlining provision], our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated." *Georgis v. Ashcroft,* 328 F.3d 962, 967 (7th Cir.2003).

AFFIRMED.