

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-20-2005

# Ly v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2107

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ly v. Atty Gen USA" (2005). 2005 Decisions. Paper 991.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/991

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2107

———

MAMADOU LY

Petitioner

v.

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES[1]

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A95-161-000)

———

Submitted Under Third Circuit L.A.R. 34.1(a)
April 21, 2005

Before: ROTH, FUENTES, and STAPLETON, Circuit Judges.

(Filed: June 20, 2005)

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

_____

[1]Caption amended pursuant to Federal Rule of Appellate Procedure 43(c).

Petitioner Mamadou Ly appeals the Board of Immigration Appeals' ("BIA") decision dismissing his appeal of the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In so ruling, the BIA found Ly to be not credible based on inconsistencies between his testimony, supporting documentation, and an investigative report prepared by a U.S. consular official in the petitioner's home country. Because we conclude that the BIA's finding was supported by substantial evidence in the record, we will deny Ly's petition for review.

## I. Facts

As we write only for the parties, we recite only the essential facts. Ly was born on January 1, 1972 and is a native and citizen of Guinea. In his written asylum application, Ly claimed that he was seeking relief because he fears harm rising to the level of persecution or torture by the Guinean government on account of his membership in a political party known as the Rally of the People of Guinea ("RPG"), an opposition group led by the country's former President Alpha Conde.

Ly alleges that he has been beaten and tortured on account of his support for the RPG. For instance, during one RPG demonstration in the city of Mamou on December 15, 1998, Ly claims that he and other protesters were seriously beaten by the Guinean military. Ly claims that he was kicked by soldiers with combat boots, stomped on, and later arrested and brought to a police station. Ly was stripped of his clothing and detained for three days in a cell with 50 or more people. On the first two days, Ly was taken from the cell and beaten by

Guinean soldiers. On the third day, when Ly asked one of the soldiers why he had been arrested, the soldier hit Ly in the head with the butt of his gun. Ly passed out and awoke later in a hospital in Mamou, where he remained for two months. The injuries that Ly suffered left him permanently injured, and he was allegedly unable to resume working at the small grocery store he owned and operated.

Subsequently, beginning in 2001, the Guinean government apparently began rounding up RPG members and putting them in jail. On February 6, 2001, Ly allegedly received a summons to report to the police, noting that "failure to appear will result in a warrant." Rather than report to the police, however, Ly fled, leaving his wife and two children behind, and made his way to the city of Conakry. In Conakry, Ly obtained his brother's passport and departed for Canada on February 12, 2001. He entered the United States from Canada on February 28, 2001. Ly learned from his wife that, subsequent to his departure from Mamou, an arrest warrant had allegedly been issued on March 15, 2001 ordering his arrest for the crime of "rebellion."

On January 25, 2002, Ly filed with the former Immigration and Naturalization Service ("INS") an affirmative application for asylum under the Immigration and Nationality Act ("INA") § 208, 8 U.S.C. § 1158, withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the implementing regulations of the Convention against

Torture, 8 C.F.R. §§ 1208.16-18.[2] The application was unsuccessful, and the INS served Ly with a Notice to Appear ("NTA") charging him with removability as an alien who at the time of entry was inadmissable for not possessing a valid entry document. At the initial hearing before the IJ, Ly, through counsel, admitted the allegations in the NTA and conceded removability. However, Ly renewed his application for asylum, withholding of removal, and protection under the Convention against Torture based on the alleged harm that he would suffer in Guinea on account of his political activities for the RPG.

At the request of the INS, the Consular Section of the U.S. Embassy in Guinea conducted an investigation into the authenticity of the February 6, 2001 summons and March 15, 2001 arrest warrant submitted as evidence by Ly in support of his application (hereinafter, the "consular report"). The consular report – a one page letter, signed by Kendall Moss, Vice Consul of the U.S. Embassy in Conakry and offered into evidence by the INS – stated that Cherif Haidara, the "Doyen des Juges d'Instruction" (Senior Examining Judge) at the "Tribunal de Premiere Instance" (Court of First Instance) in Conakry, examined the summons and arrest warrant and determined that they were "fraudulent." In particular, the consular report recited that according to Haidara, three elements indicated that the documents were not authentic. First, the documents had no signatures, while "all authentic

_____

[2] "A grant of asylum allows an otherwise-removable alien to stay in the United States." *Abdulai v. Ashcroft*, 239 F.3d 542, 545 (3d Cir. 2001). On the other hand, withholding of removal merely confers the right not to be deported to a particular country, as opposed to the right to stay in this country. *Id.*

judiciary documents should be signed by the officer who issues them."  Second, the stamps on the documents were "fraudulent imitations" of Haidara's own stamp.  Finally, the arrest warrant stated that Ly was guilty of "rebellion" and that the crime was punishable under "le code penal" (the penal code).  However, according to Haidara, rebellion is punishable under an article of the Guinean Constitution, not under the country's penal code.

At a hearing before the IJ, Ly testified under oath in support of his application.  With regard to the summons that Ly had submitted into evidence, Ly stated that he had not brought the summons with him when he fled Guinea, but that his wife had mailed the original summons to him in the United States.  With regard to the arrest warrant, Ly testified that his wife had procured a copy or "substitute" of the arrest warrant from a relative who had worked in a police station in Guinea, after Ly had left for the United States.  Ly testified that the summons lacked a signature because "most of those documents are not signed.  They just take the blank or empty summons, then they will fill out your name on it, and then they will send it to you."  When asked to explain how he knew that summonses were not signed, Ly replied: "My summons, they did not sign.  But I do not know about others."

The IJ denied Ly's application for asylum, withholding of removal, and protection under the Convention against Torture, finding that he lacked credibility based on the consular report as well as several other inconsistencies between his testimony and his asylum application.  On appeal, the BIA, in a *per curiam* decision, agreed with the IJ that Ly was not credible based on the inconsistencies between the arrest warrant and summons Ly had

-5-

submitted into evidence, Ly's testimony about these documents, and the findings of the consular report. The BIA determined that doubts about the authenticity of the arrest warrant and summons undermined Ly's overall credibility such that he could not carry his burden of proving his eligibility for relief or protection from removal.[3]

## II. Discussion

We review the decision of the BIA under the substantial evidence standard. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004); *Abdulai*, 239 F.3d at 549 n.2. Thus, the agency's finding of fact will be upheld so long as the evidence does not compel a contrary conclusion. *See Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). An adverse credibility finding must be upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).[4] We have jurisdiction over the BIA's order pursuant to 8 U.S.C.

---

[3]The IJ also found that Ly had deliberately submitted a frivolous asylum application, thereby rendering Ly permanently barred from seeking benefits under the INA, 8 U.S.C. § 1158(d)(6). Although the BIA found that "there was concern with regard to the authenticity of [Ly's] supporting documents," the evidence did not compel a conclusion that Ly had filed a frivolous application. Accordingly, the BIA reversed the IJ's finding, and Ly is no longer permanently barred from seeking benefits under the INA.

[4]Ly and the Government dispute whether this Court should limit its review to the decision of the BIA, or whether it should also examine the decision of the IJ. In *Abdulai*, we explained that "[w]hen the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate." 239 F.3d at 549 n.2. In this matter, the BIA began its opinion by noting that the IJ "correctly found that [Ly] was not credible based on the inconsistencies between [his] testimony, his supporting documents, and the [consular report]. The inconsistencies regard events central to [Ly's] asylum claim and are specific and cogent enough for us to conclude that he is not credible." The opinion then proceeds to identify several of the purported inconsistencies

§ 1252(a).

On the record before us, we cannot say that the BIA's adverse credibility judgment against Ly was not supported by substantial evidence in the record. The February 6, 2001 summons and the March 15, 2001 arrest warrant, which the BIA found to be of doubtful authenticity based on the consular report, go to the very heart of Ly's claim that the Guinean government was seeking to arrest, persecute, and possibly torture him. Indeed, Ly's application to establish his eligibility for relief or protection from removal hinges on the contention that he is a member of the RPG and that he has been persecuted in the past on account of his involvement in the RPG and faces further persecution, including arrest, were he to be returned to Guinea. However, the consular report, prepared at the request of the INS by the U.S. Embassy in Guinea, casts significant doubt about the authenticity of the summons and the arrest warrant.

Ly provided no reasonable explanation for the discrepancies found in the consular report. For instance, the consular report recited the fact that the summons, allegedly an original document, contained no signature, and yet, according to the Guinean judge Cherif

between Ly's testimony and supporting documentation based on the consular report. In our view, this indicates that the BIA undertook a *de novo* review of the record in arriving at its own conclusion that Ly was not credible. Thus, we shall limit our review to the opinion of the BIA. *Id.* ("In this case, the BIA never expressly 'adopted' any portion of the IJ's opinion or announced that it was deferring to any of the IJ's findings. We therefore review only the BIA's decision."). Accordingly, we will not consider Ly's challenge to several purported factual inconsistencies found by the IJ in support of his adverse credibility finding which were not otherwise adopted or relied upon by the BIA.

Haidara, all authentic judiciary documents are signed by the issuing officer. However, when asked to explain why his summons contained no original signature, Ly provided inconsistent testimony. *Compare* A.R. at 152 (Ly testified that the summons he submitted into evidence did not have a signature on it because "most of those documents are not signed. They just take the blank or empty summons, then they will fill out your name on it, and then they will send it to you.") *with* A.R. at 152 (When asked to explain how he knew that summonses are not signed, Ly testified: "My summons, they did not sign. But I do not know about others."). Furthermore, at the hearing before the IJ, Ly stated that the arrest warrant was not an original document, and instead was a reproduction prepared by a relative of his wife who worked in the police station. Yet, Ly did not make any such disclosure about the arrest warrant when the exhibit was first proffered into evidence. As the BIA noted, Ly's belated revelation about the substitute character of the arrest warrant "casts significant doubt upon the authenticity of the document itself and the veracity of [Ly's] explanation."

Ly devotes the bulk of his argument on appeal to challenging the admission into evidence of the consular report. In particular, Ly contends that the consular report constitutes double hearsay that does not fall within any of the recognized exceptions to the hearsay rule. In addition, Ly contends that under Federal Rule of Evidence 403, the consular report should have been excluded from evidence because its probative value was substantially outweighed by the danger of unfair prejudice to Ly. However, it is well-established that the Federal Rules of Evidence do not apply in immigration proceedings. *See Ezeagwuna v. Ashcroft*, 325

F.3d 396, 405 (3d Cir. 2003). Rather, the criteria for determining the admissibility of evidence, including hearsay evidence, "is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law." *Id.* (quoting *Bustos-Torres v. INS*, 898 F.2d 1053, 1055 (5th Cir. 1990)); *see also Kiareldeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001) ("Though the hearsay nature of evidence certainly affects the weight it is accorded, it does not prevent its admissibility in immigration cases.") (citations omitted).[5] As we have noted before, "[i]n the evidentiary context, fairness is closely related to the reliability of the evidence." *Id.* (quoting *Felzcerek v. INS*, 75 F.3d 112, 115 (2d Cir. 1996)).[6]

We previously found a consular document unreliable in *Ezeagwuna*, 325 F.3d at 405-08. *Ezeagwuna*, however, is distinguishable. There, the INS provided the State Department letter to the alien only several days before the hearing, and the letter, which contained multiple layers of hearsay, did not provide information from anyone with direct knowledge

---

[5]We note that by resting his opposition to the admissibility of the consular report on the Federal Rules of Evidence, Ly did not raise in his brief to this Court an argument premised on fairness or due process considerations. However, we think that Ly did not waive the issue as his objections to the admissibility of the hearsay evidence sufficiently preserved the question of whether it was fair for the BIA to rely on the consular report in reaching its adverse credibility determination.

[6]Ly also contends that the BIA's reliance on the consular report violates the standards for the admissibility of expert evidence under Federal Rule of Evidence 702 and the Supreme Court's decision in *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). However, because the Federal Rules of Evidence do not apply in immigration proceedings, Ly's reliance on Rule 702 and *Kumho Tire* is misplaced. *See Ezeagwuna*, 325 F.3d at 405; *see also Gebrendrias v. Ashcroft*, 79 Fed. Appx. 202, 204 (7th Cir. Oct. 14, 2003) (noting that Rule 702 and *Kumho Tire* do not apply in immigration hearings).

of the investigation.

However, in this matter, we do not believe that the consular report was unreliable or that its use was unfair to Ly. As an initial matter, we note that, unlike in *Ezeagwuna* where the INS provided the consular report to the alien only a few days prior to the hearing before the IJ, in this case the record shows that counsel for Ly received the consular report a month prior to the hearing. Having had around a month to collect and present rebuttal evidence to the consular report, Ly did not present any such evidence to refute the consular report's findings, nor did counsel for Ly request a continuance to do so.[7] Moreover, unlike in *Ezeagwuna* where there were doubts about what the investigation entailed or how it was conducted, in this matter the consular report makes clear that the judge who allegedly issued the summons and arrest warrant examined the documents for their authenticity and determined that they were fraudulent.

Ly speculates that the Guinean judge who concluded the documents were fraudulent – Cherif Haidara – was probably subject to executive influence and biased in this matter. While we readily concede that such may be possible as a theoretical matter, Ly offers nothing

---

[7]Such evidence could have included a statement from his wife, who sent the summons and arrest warrant to Ly, as well as statements from members of the RPG who may have received similar summons and/or arrest warrants or could have corroborated the authenticity of the documents Ly submitted. Moreover, as did the alien in *Ezeagwuna*, Ly could have retained an expert to establish the authenticity of the documents, or at the very least explain the difficulties associated with trying to prove or disprove the authenticity of official documents in Guinea, and more particularly, politically-motivated official documents. We note, however, that the absence of such evidence would alone not be enough to deny Ly's application for relief.

but speculation regarding Haidara's doubtful credibility. Nor does Ly offer any evidence to rebut Haidara's findings that authentic summons and warrants are signed; that the stamps on these documents were counterfeit reproductions; or that a judicial document charging "rebellion" would cite the Guinean Constitution, not the penal code. We do not mean to suggest that Ly was required to prove that Haidara was somehow a dishonest or corrupt Guinean official, but more than speculation about his credibility was required to cast doubt on the consular report's reliability and trustworthiness. The absence of any such evidence in the record requires us to find the BIA decision to be supported by substantial evidence.

## III. Conclusion

We have considered all of the arguments advanced by Petitioner and conclude that no further discussion is necessary. Accordingly, we will deny the petition for review.

———

-11-