NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0009n.06
Filed: January 5, 2007

Nos. 05-4129

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| Aseel Elias | ) | |
|---|---|---|
| | ) | |
|     *Plaintiff - Appellant* | ) | ON PETITION FOR REVIEW |
| | ) | FROM A FINAL ORDER OF |
| **v.** | ) | THE BOARD OF IMMIGRATION |
| | ) | APPEALS |
| **Alberto Gonzales** | ) | |
| | ) | **OPINION** |
|     *Defendant - Appellee* | ) | |

**BEFORE:** **MARTIN, COOK, Circuit Judges; and BUNNING, District Judge**[*]

**BUNNING, District Judge.** Aseel Elias appeals the final order of removal entered by the Board of Immigration Appeals ("Board" or "BIA") on August 11, 2005, wherein the Board affirmed, without opinion, the decision and order of the Immigration Judge ("IJ") denying Elias's application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). On appeal, Elias argues that (1) he has established eligibility for asylum and withholding; (2) his due process rights were violated by the IJ; and (3) the record has become stale and the matter should, therefore, be remanded. For the reasons set forth below, we **DENY** the petition for review.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

---

[*] The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Elias is a native and citizen of Iraq, as well as a member of the Chaldean Christian minority. As a youth, he lived with his family in Mosul, a city located in northern Iraq, where his father worked as CEO of the tourism and culture board for the Iraqi government. When Elias was ten or eleven years old, his family was forced to move to Baghdad when his father lost his job, which Elias believes was due to his family's Christian religion. Elias lived in Iraq until he was thirteen years of age, at which time his mother took him and his sister to the United States without their father, with whom they had lost contact.

## A. Commencement of Removal

Elias entered the United States on July 30, 1990, as a non-immigrant visitor at New York City. Elias was authorized to remain in the United States until January 29, 1991. On October 28, 1998, the Immigration and Naturalization Service ("INS") issued a "Notice to Appear" charging Elias with being subject to removal under the Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C.§ 1227(a)(1)(B), because he remained in the United States beyond the time permitted by the non-immigrant Visa.[1]  On April 1, 1999, the Immigration Court received Elias's Application for Asylum and for Withholding of Removal ("Asylum Application"). As the basis for the Asylum Application, Elias set forth his fear of being persecuted by the Ba'ath Party in Iraq, including an explanation of the reasons his family left Iraq. A hearing on Elias's Asylum Application was set for December 14, 1999.

When Elias failed to appear in court on the date set, the IJ ordered the removal of

---

[1] Elias had previously been included as a derivative asylum applicant on his mother's application. However, when he turned twenty-one in 1998, the INS notified his mother and placed Elias into separate proceedings. (Elias's mother became a permanent resident in July of 2005 upon a petition from her U.S. citizen parents.)

Elias *in abstentia*. Elias filed a motion to reopen, claiming that his failure to timely appear was due to some unfortunate traffic incidents (i.e. "exceptional circumstances"), namely getting lost on the way to the hearing. The IJ denied Elias's motion to reopen, as well as a motion to reconsider. Elias subsequently filed an appeal to the BIA, which reversed the IJ's order on April 18, 2002. The BIA remanded the case back to the Immigration Court to allow Elias the opportunity to apply for "any form of relief" from removal that may be available.

**B.      Merits Hearing**

At the Master Calendar hearing on January 29, 2003, following the BIA's remand, Elias requested permission to submit a supplemental asylum application. Although the IJ denied his request for submission of a supplemental application, the IJ did permit Elias to submit changes or corrections to his initial asylum application if submitted 30 days prior to the Merits Hearing, which was set for March 2, 2004. At the Merits Hearing, Elias appeared with counsel and submitted his application for asylum, but made no written changes or corrections, and offered no documents or affidavits in support of the application, nor did he indicate that any would be forthcoming.

During the Hearing, Elias testified about his experiences in Iraq and indicated that the reason his sister and mother fled the country was because "there was something going on . . . there's a secret army or secret police . . . [s]ome people go away and some people disappear, then, you know, then we start seeing a lot of people fleeing from there." At the time he left Iraq, Elias stated that his father was missing for two or three months, and he feared that the Ba'ath party had picked his father up. While Elias never actually knew

whether or not his father joined the Ba'ath Party, he believed that to be true based on some of his mother's remarks.[2] Elias further testified that he feared going back to Iraq, as he might be persecuted by the Shi'ites because they "don't operate with Christians."[3]

Even though Elias had a multitude of opportunities to present testimonial evidence of friends and relatives, he failed to put forth any such evidence. At the time of the Merits Hearing, Elias's mother and sister were living in Detroit, where the removal proceedings were held. Elias also had an uncle who was a U.S. citizen, living in California, who had traveled to Iraq. Elias additionally indicated that he knew other people, through his church, who had been to Iraq after the fall of Saddam's regime. Despite the existence of the potential witnesses, Elias did not bring any witnesses to testify about the current conditions in Iraq during the Merits Hearing and did not provide any affidavits.

Moreover, Elias did not submit any documentary evidence, other than his original application for asylum. Although Elias's counsel referenced country reports discussing the conditions in Iraq during his closing, indicating that they were more or less what Elias would have submitted, the reports were actually submitted by the Government. The IJ also submitted an article at the Merits Hearing pertaining to the draft of the new Iraqi constitution for both parties to review and comment. Elias's counsel agreed that the article was relevant for purposes of addressing religious freedom in Iraq and even indicated that

---

[2] Elias did testify that he had renewed contact with his father, but he did not inquire as to his father's party affiliation or anything concerning the circumstances in Iraq after the fall of Saddam's regime.

[3] At the time of the Merits Hearing in March of 2004, there had been a regime change in Iraq. Although Elias failed to update his asylum application to that effect, his testimony at the Hearing did shift the focus of his feared prosecution from the ousted Ba'ath Party to the Shi'ite majority.

he had considered asking the Court to take judicial notice thereof.

## C.    Decision of the Immigration Judge

In her oral decision on March 2, 2004, the IJ denied Elias's request for asylum and for withholding of removal under the INA, as well as under the CAT.  She found Elias removable and designated Iraq as the country of removal.  Specifically, the IJ found that Elias's evidence did not support a finding of persecution or torture because Elias had not presented any evidence of past persecution, nor provided any support for his claim that he had a reasonable fear of future persecution or torture.

The IJ rejected both of Elias's bases for his asylum claim, that of his fear of the Ba'ath party (as contained in the written application) and his fear of the Shi'ite Muslim majority (as he testified to at the Hearing).  The IJ concluded that Elias could not credibly fear the Ba'ath party because it has been removed from power.  Additionally, with respect to Elias's claim regarding the Shi'ite majority now in place, Elias failed to provide any evidence to support his speculation that he would be persecuted as a Christian.  According to the IJ, Elias's uncorroborated testimony was insufficient to support a finding of future persecution because Elias did not proffer any witnesses and provided no documentary evidence about the contemporaneous conditions facing Christians in Iraq.

Upon Elias's appeal of the IJ's removal order to the BIA, the Board affirmed, without opinion, the decision of the IJ.  Elias timely appealed.

## II.    ANALYSIS

## A.    Removal Claims

Elias seeks three forms of direct relief from deportation in this matter: (1) application

for asylum, (2) withholding of removal under the INA, and (3) withholding relief under the CAT.[4] The latter two claims for withholding will be considered in concert.

### 1.    Standard of Review

This Court's jurisdiction to review a removal order by the BIA is pursuant to section 242 of the INA, which confers exclusive jurisdiction on the Courts of Appeals to review final orders of removal. *See* 8 U.S.C. § 1252. The Court's jurisdiction is limited to review of final orders in which the alien has exhausted all administrative remedies. *See* 8 U.S.C. § 1252(d)(1).

In considering a petition for review of a BIA decision, the Board's legal determinations are subject to the *de novo* standard of review, whereas any factual findings are subject to the substantial evidence standard. *See Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005) (internal citations omitted). However, in this case, where the Board affirmed the results of the IJ's decision without additional analysis, the Court reviews the IJ's order under the *de novo* and "substantial evidence" standards. *See Hassan v. Gonzales*, 403 F.3d 429, 433 (6th Cir. 2005).

Although not briefed by the parties, the substantial evidence standard, which previously required upholding the Board's findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," has since been altered by a statutory repeal. *See Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th

---

[4] The record is unclear as to whether Elias is actually raising the claims for withholding under the INA and the CAT before this Court. Although the claims were raised and adjudicated below, Elias has only briefed the asylum issue in this matter. Respondent, however, has briefed all three removal claims.

Cir. 2004). The new language for the substantial evidence standard holds that findings of fact are now "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 702-03. Because the jurisprudence has not changed, only the "reiteration of the repealed" language,[5] we will still reverse only where the evidence is "so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged." *Yu*, 364 F.3d at 703; *see also INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003).

### 2.    Eligibility for Asylum

Section 208(a) of the INA, 8 U.S.C. § 1158(a), authorizes the Attorney General, in his discretion, to grant asylum to an alien who is a "refugee" as defined in the Act – i.e., an alien who is unable or unwilling to return to his home country "because of persecution or

---

[5] This Court, in *Yu*, explained the evolution of the standard:

> [I]n 1996, 8 U.S.C. § 1105a(a)(4) was repealed and replaced by 8 U.S.C. § 1252(b)(4). Nevertheless, many circuits, including the Sixth, continue to cite the "supported by reasonable, substantial, and probative evidence" language as controlling. Given that this language was repealed, we take this opportunity to clarify the standard of review.
> Now, findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Courts have found that § 1252(b)(4)(B) basically codifies the Supreme Court's substantial evidence standard. Thus, our jurisprudence, except for reiteration of the repealed "supported by reasonable, substantial, and probative evidence" language, remains good law. *See Ouda*, 324 F.3d at 451 (finding IJ's determination should be upheld unless evidence "not only supports a contrary conclusion, but indeed compels it," and "as such, the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution").

364 F.3d at 702-03 (some citations omitted).

a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 423, 428 n. 5 (1987); *Elias-Zacarias*, 502 U.S. at 481. Because the Attorney General has discretion under the Act to grant asylum to a "refugee," the disposition of an application for asylum by the IJ, acting for the Attorney General, involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General."[6] *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir.1994). The alien bears the burden of establishing that he is a refugee and that he has either suffered past persecution or has a well-founded fear of future persecution upon return to the country of removal. *See Ouda*, 324 F.3d at 451; *see also* 8 C.F.R. § 208.13(a).

The well-founded fear of persecution requirement includes both a subjective and an objective component. *See Cardoza-Fonseca*, 480 U.S. at 430-31; *Perkovic*, 33 F.3d at 620-21. If past persecution is established, the asylum applicant is presumed to have a well-founded fear of persecution.[7] *See Ouda*, 324 F.3d at 452. However, absent any evidence of past persecution, "an alien must actually fear that he will be persecuted upon

---

[6] As to the standard of appellate review for the discretionary granting of asylum status, the judgment of the IJ is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(B); *see also Yu,* 364 F.3d at 703.

[7] This presumption can be overcome, however, by establishing by a preponderance of the evidence that "since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted upon return." *Ouda*, 324 F.3d at 452.

return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic*, 33 F.3d at 620-21. Furthermore, the fear of persecution must be based on at least one of the qualifying grounds. *See* 8 U.S.C. § 1101(a)(42) ("on account of race, religion, nationality, membership in a particular social group, or political opinion"). A general fear for one's safety is insufficient.

Because Elias does not assert that he was persecuted in Iraq prior to coming to the United States, he is not entitled to a presumption of future persecution and is therefore required to establish a genuine fear of persecution that a reasonable person in his circumstances would also experience. *See Namo v. Gonzales*, 401 F.3d 453, 456 (6th Cir. 2005). Elias does assert in his brief that as a member of the Christian minority in Iraq he is in danger of being persecuted upon his return because of his faith. However, whether or not the record shows that Elias actually possessed and established a subjective fear of persecution,[8] the evidence presented at the Hearing does not rise to the level required to prove an objective fear of persecution.

Beyond his subjective beliefs and fears, Elias failed to put forth any objective evidence to establish that his alleged subjective fear of persecution was indeed reasonable. Elias does not have to show that he probably will be persecuted if he is deported, as one can have a well-founded fear when there is less than a 50% chance that

---

[8] The record reveals that even a subjective fear is questionable in this case, legally speaking, because the actual fear Elias may feel is probably more attributable to the general lack of security in Iraq, rather than a fear of persecution based on Elias's religion.

the feared occurrence will actually take place.[9]  *See Pilica* v. Ashcroft, 388 F.3d 941, 950 (6th Cir. 2004) (citations omitted).  Elias must, however, demonstrate an actual fear that he will be persecuted upon return to his country, and he must present evidence establishing an "objective situation" under which his fear can be deemed reasonable.  *See id.*  Although Elias did speculate that he would be persecuted because the Shi'ite Muslims are the majority in Iraq and they do not like Christians, this falls woefully short of substantiating an objectively reasonable fear as to Elias himself.  Mere speculation is never reasonable absent some degree of objective substantiation.

In a conversation with his father, with whom he regained contact several months prior to the Merits Hearing held in March of 2004, Elias testified that his father told him that killing in Iraq was random, living conditions were very poor, and the overall situation was unsafe.  Nevertheless, Elias was not able to provide any affidavit from his father or any concrete information as to how the general violence in Iraq pertained to the treatment or persecution of Christians.[10]  While the situation in Iraq is certainly not the most desirable from a security standpoint, Elias is required under the INA to put forth evidence as to problems he would face in Iraq *as a Christian*, not as a mere citizen generally.

In sum, Elias's fear is at most "based on 'the existence of a generalized or random

---

[9] This is in contrast to the withholding of removal standards under the INA and the CAT, where a probability of harm (i.e., more likely than not) is a required showing for relief.

[10] Elias also testified that his uncle, who is a U.S. citizen living in California, was briefly detained when he returned to Iraq.  However, Elias again failed to provide any testimony or evidence that, besides being detained, his uncle was in any danger or feared any type of persecution while in Iraq as a Christian.  As Elias indicated from his father's statements, where there is fear and killing in Iraq, it is for the most part random and unrelated to religious affiliation.

possibility of persecution in his native country,' which is generally insufficient to establish persecution." *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) (quoting *Castellano-Chacon v. INS,* 341 F.3d 533, 550 (6th Cir. 2003)). Elias must establish that he is at particular risk as a Christian and that his predicament is appreciably different from the dangers faced by other non-Christian Iraqis. *See id.* (citing *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998)). Because Elias's unsupported and non-particularized conjecture about what life might be like for him in Iraq does not constitute an objectively reasonable showing of a well-founded fear of future persecution, Elias did not sufficiently establish his eligibility for asylum.

Accordingly, the decision below is affirmed because (1) the evidence presented does not compel a contrary conclusion, but rather supports the initial decision to deny asylum,[11] and (2) the discretionary judgment of the IJ to deny asylum based upon the determination that Elias is not a "refugee," as defined by 8 U.S.C. § 1158, was not contrary to law or an abuse of discretion. *See Yu*, 364 F.3d at 702-03.

### 3.    **Withholding of Deportation**

---

[11] Although the IJ did not base her decision to deny asylum on the credibility of Elias, she did question his credibility surrounding alleged conflicting statements between his asylum application and his testimony during the Merits Hearing. Elias asserts that the alleged inconsistencies were merely the result of changed conditions in Iraq from the time he initially filed his application and when he testified at the Merits Hearing some five years later (since he decided not to make additions or corrections to his application as permitted). As such, Elias claims that the IJ's credibility considerations were misplaced and constitute error. However, there were not formal findings made by the IJ concerning Elias's credibility, and to the extent her credibility concerns constitute findings, they are findings of fact. *See Yu*, 364 F.3d at 703. Therefore, because a reasonable adjudicator would not be compelled to conclude otherwise based on the record, whatever credibility findings that were made by the IJ will not be disturbed on appeal. *See id.* at 704 (affirming the IJ's denial of asylum, which was based solely on credibility concerns, even though some of the IJ's grounds seemed "weak").

An alien can request withholding of removal in deportation proceedings under section 241(b)(3) of the INA, as well as under the CAT. *See Almuhtaseb*, 453 F.3d at 749; *see also* 8 U.S.C. § 1231(b)(3). Although Elias specifically raised claims for withholding of removal under the INA and the CAT at the Merits Hearing below, and the claims were adjudicated by the IJ, Elias has not independently briefed all three removal claims before this Court. Instead, Elias only asserts that he has established a "well-founded fear of persecution," which directly pertains to the asylum claim only.[12] However, a request for asylum in deportation proceedings is automatically considered to include a request for withholding of removal under the INA. *See* 8 C.F.R. § 208.3(b); *see also INS v. Stevic*, 467 U.S. 407, 420 n.13 (1984). A brief analysis of Elias's withholding claims, therefore, is warranted.

### (a) Withholding Under the INA

While the Attorney General has discretion in granting *asylum* to a refugee, "[w]ithholding of removal is mandatory if an alien establishes that his 'life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (citations omitted). To that effect, in order to prevail on a petition

---

[12] Additionally, and importantly, because the "clear probability" and "more likely than not" standards for the withholding of removal provisions are more stringent than the "well-founded fear of persecution" standard for asylum claims, and are thus more difficult burdens for the alien to meet, a Court's finding on an asylum claim is directly implicated by a claim for withholding of removal, whether under the INA or the CAT. *See Carodoza-Fonseca*, 480 U.S. at 430-31. In other words, an alien who fails to satisfy his eligibility for asylum necessarily fails to satisfy the higher burdens for withholding. *See Yu*, 364 F.3d at 703 n.3 ("Since [petitioner] does not establish eligibility for asylum, he does not meet the more stringent standards required for withholding or the Torture Convention."); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998).

for withholding of removal under the INA, Elias must show that there is a "clear probability of persecution," or that "it is more likely than not" that he would be subject to persecution on the basis of one of the five qualifying grounds. *See Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). Elias may also establish a well-founded fear of future persecution, provided that he can demonstrate both a subjective fear of persecution and an objectively reasonable possibility of persecution if forced to return to the country in question. *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005) (citing *Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2004)).

As is evident, the analysis in a claim for withholding of removal under the INA effectively mirrors the analysis for an asylum claim, which explains the reason why asylum claims automatically incorporate INA withholding claims. Accordingly, based on the determination that Elias has not established eligibility for asylum, the IJ's decision to deny withholding of removal under the INA is similarly upheld.

### (b)    Withholding Under the CAT

In contrast, to qualify for withholding under the CAT, Elias need not show that the harm he allegedly faces is based on a requisite ground, as is required for asylum claims and for withholding under the INA. Instead, Elias must establish a "particularized threat of torture." *Almuhtaseb*, 453 F.3d at 751 (citing *Castellano-Chacon*, 341 F.3d at 551). Consequently, for Elias to eligible for withholding of removal under the CAT, he "bears the burden of establishing 'it is more likely than not that he would be tortured if removed to the proposed country of removal.'" *Liti*, 411 F.3d at 641 (quoting 8 C.F.R. § 1208.16(c)(2)).

The term "torture" is reserved only to describe "an extreme form of cruel and

inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Almuhtaseb*, 453 F.3d at 751 (citing 8 C.F.R. § 1208.18(a)(2)). In assessing the risk of torture, the adjudicator is to consider "all evidence relevant to the possibility of future torture," including, *inter alia*, evidence of any past torture inflicted upon Elias, as well as evidence that Elias could relocate to another area of Iraq where he might not be tortured. *See* 8 C.F.R. § 208.16(c)(3) (2006). However, Elias did not present any objective evidence to support a claim that he was in *probable* danger of being tortured upon returning to Iraq.

Aside from Elias's failure to set forth any argument in support of a request for relief under the CAT, the record still fails to provide any support for the claim that Elias has been or would be subjected to torture when returning to Iraq.[13] Accordingly, Elias's claim for withholding under the CAT is without merit.

## B. Due Process Claims

Fifth Amendment due process guarantees extend to aliens in removal proceedings, entitling them to a full and fair hearing. *See Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). Elias asserts that the IJ violated his due process rights on two grounds: (1) by not affording him an opportunity to submit a supplemental asylum application, and (2) in considering evidence not in the record to support changed country conditions.

Alleged due process violations in removal hearings are subject to *de novo* review.

---

[13] Although the regulations do direct the adjudicator of a withholding claim under the CAT to consider any "evidence of gross, flagrant, or mass violations of human rights in the country of removal, where applicable." Elias did not present any such evidence, subjective or objective. 8 C.F.R. § 208.16(c)(3)(iii).

*See id.* However, because Elias failed to raise the due process allegations while before the BIA, thereby failing to exhaust all administrative remedies of right, this Court is not vested with jurisdiction pursuant to 8 U.S.C. § 1252(d)(1).[14] *See Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005); *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004).

Assuming *arguendo* that the due process claims are even properly before this Court, the record does not establish a due process violation. Elias was provided ample opportunity to amend his asylum application to reflect changed country conditions.[15] With respect to Elias's second claim, any evidence reviewed by the IJ outside of the record was done so with the approval of Elias.[16] Regardless, Elias fails to articulate what, if any, prejudice resulted from the IJ's actions. Accordingly, Elias cannot demonstrate a due process violation and, therefore, must not prevail.

## C. Stale Record

Finally, Elias requests a remand in the alternative, asserting that the record has become stale and no longer adequately reflects the conditions facing Christians in Iraq. The proper recourse for Elias, under the circumstances as pled, would be to petition the

---

[14] In his appeal to the BIA, Elias raised only two general claims (removal and credibility), neither of which asserted any due process violations or even pertained to the underlying due process allegations now before the Court. J.A. 12, 13.

[15] When the IJ denied Elias's request to submit a supplemental asylum at the Master Calendar hearing in January of 2003, the IJ indicated that if Elias had "changes or corrections" he wished to make to his asylum application, he could "submit them in writing," in lieu of filing a new application, as long as the changes were submitted 30 days prior to the Merits Hearing that was scheduled for the end of 2003. Elias did not make any such changes or corrections.

[16] In response to the IJ's indication that she had considered the article relating to the Iraqi Constitution, counsel for Elias responded: "And that's fine. I have no problem. I was actually going to ask the Court to accept judicial notice of that because I believe that it is relevant because some of what's in that draft constitution...." J.A. 102.

BIA to reopen his case. According to the regulations, Elias is permitted:

> To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.

8 C.F.R. § 1003.2(c)(3)(ii). Thus, should Elias take this course of action, the BIA is authorized to "reopen a closed proceeding if [Elias] includes with the petition affidavits and the information to be considered at the reopened proceeding relating to the change in conditions since the BIA originally considered the claim." *Zeito v. Gonzales*, 152 F.App'x. 496, 503 (6th Cir. 2005); *see also* 8 C.F.R. § 1003.2(c)(1). The time and numerical limitations placed on motions to reopen do not apply to motions founded upon changed country conditions. *See* 8 C.F.R. § 1003.2(c)(3)(ii).

### III. CONCLUSION

In accordance with the foregoing analysis, the petition for review is denied.