NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0444n.06

No. 08-4287

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 30, 2009**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| FARAJ MOUSA HANNA, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF A DECISION OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE:    McKEAGUE and WHITE, Circuit Judges; and MARBLEY, District Judge.[*]

**McKEAGUE, Circuit Judge.** Faraj Mousa Hanna ("Hanna") seeks review of an order of

the Board of Immigration Appeals ("BIA") upholding the Immigration Judge's ("IJ") denial of his

application for withholding of removal under the Immigration and Nationality Act ("INA") and the

United Nations Convention Against Torture ("CAT"). Because substantial evidence supports both

the IJ's and the BIA's decisions, we **DENY** the petition for review.

**I**

Hanna is a native and citizen of Iraq. After marrying a United States citizen in Amman,

Jordan on July 5, 1995, Hanna was lawfully admitted to the United States as a conditional permanent

resident on September 24, 1996. *See generally* 8 U.S.C. § 1186a. However, Hanna and his wife

_____

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District
of Ohio, sitting by designation.

failed to appear at the interview scheduled for his joint petition to remove the conditions on his permanent residence, as required by 8 U.S.C. § 1186a(c)(1)(B). Shortly thereafter, on October 21, 1999, Hanna's wife filed for divorce. Hanna then requested a waiver of the joint petition requirement based upon his claims that he entered the marriage in good faith and also would suffer extreme hardship if forced to return to Iraq. *See* 8 U.S.C. § 1186a(c)(4). The government denied both waiver requests. Accordingly, Hanna's petition was denied and his status terminated on March 14, 2002.[1] *See* 8 U.S.C. §§ 1186a(b)(1), (c)(2)(A)(ii). A Notice to Appear dated March 14, 2002 charged Hanna with removability based upon the termination of his conditional residence status. *See* 8 U.S.C. § 1227(a)(1)(D)(i).

At the master calendar hearing before the IJ on August 29, 2003, Hanna admitted the factual allegations contained in the Notice to Appear but contested removability. He sought review of the government's denial of his requests for a waiver of the joint petition requirement. He also filed an application for withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3)(A), and the CAT, claiming that he would be subject to persecution and torture, respectively, if he were removed to Iraq.[2]

---

[1]Although the denial of Hanna's petition occurred on March 14, 2002, his status was terminated as of September 26, 1998—the end of his two-year period of conditional permanent residence.

[2]Hanna was statutorily ineligible to seek asylum because he failed to file an asylum application within one year of his arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B) (requiring an asylum applicant to "demonstrate[ ] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States"). Although this one-year requirement is subject to certain exceptions, *see* 8 U.S.C. § 1158(a)(2)(D), Hanna did not argue before the IJ, the BIA, or this court that an exception was warranted in his case.

A merits hearing was held on February 5, 2007. At the hearing, Hanna described the circumstances of his marriage to his ex-wife and his move to the United States. He also testified that he served in the Iraqi military from 1971 until 1990. During the Iran-Iraq war, he was a prisoner of war from February 1982 until August 1990. After he was released, he owned a business in Iraq where he sold construction material, paint, and other items.

In addition, Hanna testified that he is a "Catholic Christian." He testified that he was treated poorly as a prisoner of war because of his Christianity. He also testified that if he were to return to Iraq, he would be killed because of his religion and because he would be considered an American. Specifically, he feared the Sh'ia and Sunni Muslim organizations because "[t]hey will kill Christians who have especially relatives either European or American." He claimed that these organizations were "kidnaping people who have relatives here" and asking for "large ransoms of money." On cross-examination, however, Hanna admitted that there was also fighting between Sunni Muslims and Shiite Muslims in Iraq and that Iraq was in the midst of a "very bad" civil war.

After the hearing, the IJ found Hanna removable and denied his requests for a waiver of the joint petition requirement as well as his application for withholding of removal under the INA and the CAT. Regarding his withholding of removal claims, the IJ noted that it had some concerns with Hanna's credibility and pointed out that Hanna had not submitted any corroborating evidence other than country condition information. Ultimately, however, the IJ did not render an adverse credibility

---

Despite his ineligibility for asylum, however, Hanna was still able to apply for withholding of removal under the Immigration and Nationality Act ("INA") and the CAT. *See* 8 C.F.R. § 1208.13(c)(1).

finding. Even accepting Hanna's testimony as credible, the IJ concluded, he had failed to establish

his eligibility for withholding of removal under either the INA or the CAT. Specifically, the IJ found

that Hanna's claims were premised solely on conditions of general civil strife resulting from the fall

of Saddam Hussein's regime, which was insufficient to constitute either persecution or torture.

Hanna appealed the IJ's decision to the BIA, raising only the issue of his eligibility for

withholding of removal under the INA and the CAT. The BIA noted that the IJ's factual finding of

"country-wide civil strife" in Iraq was not clearly erroneous and affirmed the IJ's denial of relief.

Hanna filed a timely petition for review of the final order of removal with this court. *See* 8 U.S.C.

§ 1252(b).

## II

### A. Standard of Review

On appeal, Hanna challenges the decisions of the IJ and the BIA only as they relate to his

application for withholding of removal under the INA and the CAT. Where, as here, the BIA has

adopted the IJ's decision with additional commentary, we review the decision of the IJ, as

supplemented by the BIA, as the final administrative order. *Zhao v. Mukasey*, 553 F.3d 436, 443

(6th Cir. 2009); *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). We review questions of law

*de novo*, deferring to the BIA's reasonable interpretations of the INA. *Singh v. Gonzales*, 451 F.3d

400, 403 (6th Cir. 2006). But we review factual findings under the deferential "substantial evidence"

standard. *Id.*; *see also Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). Under this standard,

administrative findings of fact are "conclusive" unless "any reasonable adjudicator would be

compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008).

## B.  Withholding of Removal under the INA

To be eligible for withholding of removal under the INA, an applicant must demonstrate that his "life or freedom would be threatened in [the country of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Such a threat to life or freedom will be presumed if the applicant has suffered past persecution on account of a protected ground in the proposed country of removal. 8 C.F.R. § 1208.16(b)(1)(i). An applicant who cannot show past persecution, however, may still demonstrate a future threat to his life or freedom by establishing that it is "more likely than not" that he would be persecuted on account of a protected ground upon removal. 8 C.F.R. § 1208.16(b)(2). In such cases, an applicant is not required to demonstrate that he would be singled out individually for persecution as long as he can: 1) establish "a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of" a protected ground, and 2) show his "own inclusion in and identification with such group of persons such that it is more likely than not that his . . . life or freedom would be threatened" upon return to the country in question. *Id.*

Here, Hanna does not argue that he is entitled to relief because he suffered past persecution in Iraq. Rather, he claims that he will face future persecution and torture if forced to return to Iraq because of his Christian religion.[3] In addition to his general testimony that he feared returning to

---

[3]At the merits hearing, Hanna also stated that he feared returning to Iraq because he would be considered an American. However, Hanna did not raise this particular basis for relief in his

Iraq because he is a Christian, Hanna submitted country reports and newspaper articles in support of his claim. Indeed, some of these documents indicate that Christians in some areas of Iraq have been targeted by Islamic extremist groups. *See, e.g.*, UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES, COUNTRY OF ORIGIN INFORMATION – IRAQ 7-8 (2004); U.S. DEPARTMENT OF STATE, ISSUE PAPER: CHRISTIANS IN IRAQ (2005). Yet these documents also indicate that "[n]ot all Christians . . . have found themselves to be targets of ethnic-religious persecution" and that "[t]he ongoing insurgency affects every segment of the population, Sunni, Shi'a, and non-Muslim alike." CHRISTIANS IN IRAQ at 2. According to a 2005 U.S. Department of State report, "insurgents and terrorists kidnapped and killed government officials and workers, common citizens, party activists participating in the electoral process, civil society activists, members of security forces, and members of the armed forces, as well as foreigners." *Id.* at 5. At the merits hearing, Hanna himself conceded that Iraq was in the middle of a "very bad" civil war.

Such a generalized or random possibility of harm in the country of removal is insufficient to establish a fear, or a pattern or practice, of persecution. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006). We have repeatedly held that substantial evidence supports the conclusion that one's status as a Christian, without more, does not create a sufficiently particularized risk of persecution in Iraq. *See, e.g.*, *Hanona v. Gonzales*, 243 F. App'x 158, 163 (6th Cir. 2007) ("The

---

appeal to the BIA, nor did he do so before this court. Accordingly, he has waived the argument. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005); *see also United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))).

evidence supports the BIA's finding that the violence against Christians stems from the high level of violence in Iraq generally."); *Shasha v. Gonzales*, 227 F. App'x 436, 440 (6th Cir. 2007) (finding IJ's conclusion that "Iraq, though dangerous for all, was not especially threatening to Chaldean Christians" supported by substantial evidence); *Elias v. Gonzales*, 212 F. App'x 441, 448 (6th Cir. 2007) (holding that petitioner "must establish that he is at particular risk as a Christian and that his predicament is appreciably different from the dangers faced by other non-Christian Iraqis"); *Aoraha v. Gonzales*, 209 F. App'x 473, 476 (6th Cir. 2006) (holding that substantial evidence supported IJ's conclusion that petitioners' claims were "consistent with general civil strife [in Iraq] rather than . . . targeted persecution" against Christians); *Toma v. Gonzales*, 179 F. App'x 320, 324 (6th Cir. 2006) (noting that "[w]hile Iraq is undoubtedly violent, the threat of violence that [petitioner] will face upon her return does not constitute persecution" on account of her Christianity). Based upon the evidence, then, we cannot say that the IJ or the BIA was compelled to conclude that Hanna would more likely than not be subjected to persecution if removed to Iraq.

## C. Withholding of Removal Under the CAT

To be eligible for protection under the CAT, an applicant must show that he would more likely than not be tortured if removed to the country in question. 8 C.F.R. § 1208.16(c)(2); *see also Ceraj*, 511 F.3d at 594. The applicant must establish "'a particularized threat of torture.'" *Almuhtaseb*, 453 F.3d at 751 (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003)). Unlike withholding of removal under the INA, however, the torture need not be on account of any protected ground. *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006).

Here, Hanna's CAT claim was based upon the same grounds as his INA claim. Accordingly, for the same reasons Hanna cannot establish that he would more likely than not be subjected to persecution upon removal to Iraq, the evidence does not compel the conclusion that he would more likely than not be subjected to torture. *See Berri*, 468 F.3d at 397 (denying relief under CAT where petitioners failed to demonstrate that they would more likely than not be persecuted in the country of removal, and where CAT claim was based upon same grounds as claims for asylum and withholding of removal under the INA).

### III

Because substantial evidence supports the IJ's and the BIA's conclusions that Hanna is not entitled to withholding of removal under either the INA or the CAT, we **DENY** the petition for review.